UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KEVIN S. CUTLER | : | NO.: 3:02CV1939 (SRU) |
| | : | |
| v. | : | |
| | : | |
| WILLIAM PROULX, JON STOSUY, | : | |
| ET AL | : | DECEMBER 15, 2004 |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The defendants, **Officer William Proulx, Officer Jon Stosuy, Sergeant Lisa Freeman, John or Jane Doe, Chief Mark Sirois** and **The City of East Hartford**, hereby submit this Memorandum in Support of their Motion for Summary Judgment respectfully requesting that this Court grant their motion, as a matter of law.

## I.    BACKGROUND

The defendants hereby adopt and incorporate the defendants' Rule 56(a)1 statement and exhibits, as if fully set forth herein.

This suit stems from the arrest of the plaintiff, Kevin Cutler, by the East Hartford police on November 6, 2001 at approximately 9:45 a.m. At said time, police officer John Stosuy was monitoring traffic speed on Route 5 near the South Windsor/East Hartford border. (Police Report, p. 1, **Exhibit A**). With a laser unit, Officer Stosuy recorded the plaintiff's vehicle traveling 86 mph in a posted 45 mph zone while heading south on Route 5. (Police Report, p. 1, **Exhibit A**) (Officer Stosuy Affidavit, ¶ 6, **Exhibit B**). Officer Stosuy also observed the plaintiff's vehicle changing lanes erratically and passing other vehicles. (Police Report, p. 1., **Exhibit A**) (Officer Stosuy Affidavit, ¶ 7, **Exhibit B**). In response to this situation, Officer Stosuy, who was

operating a fully marked police cruiser, activated his lights and siren, and attempted to stop the plaintiff's vehicle. (Police Report, pp. 1-2., **Exhibit A**) (Officer Stosuy Affidavit, ¶ 8, **Exhibit B**).

The plaintiff accelerated his vehicle in an attempt to evade Officer Stosuy. (Police Report, pp. 1-2., **Exhibit A**) (Officer Stosuy Affidavit, ¶ 9, **Exhibit B**). As the plaintiff's vehicle approached an intersection where other vehicles were stopped for a red light, the plaintiff slowed down, went around several stopped vehicles, took a left through an opening in the median, completed a u-turn, and accelerated northbound at a high rate of speed. (Police Report, pp. 1-2., **Exhibit A**) (Officer Stosuy Affidavit, ¶ 10, **Exhibit B**). Officer Stosuy continued his pursuit of the plaintiff's vehicle. (Police Report, p. 2., **Exhibit A**) .

Within a short time, both the plaintiff and Officer Stosuy approached a group of vehicles that had stopped for a red light and occupied both northbound lanes. (Officer Stosuy Affidavit, ¶ 12, **Exhibit B**). The plaintiff slowed his vehicle and, according to the observations of Officer Stosuy, appeared to be looking for a way to get around them. (Police Report, p. 2., **Exhibit A**) (Officer Stosuy Affidavit, ¶ 13, **Exhibit B**). Officer Stosuy pulled alongside the left rear of the plaintiff's vehicle, and the plaintiff pulled to the right side of the road and stopped. (Police Report, p. 2., **Exhibit A**) (Officer Stosuy Affidavit, ¶ 14, **Exhibit B**). As Officer Stosuy approached the plaintiff's vehicle, he ordered the plaintiff to turn off the engine and keep his hands in plain view. (Police Report, p. 2., **Exhibit A**) (Officer Stosuy Affidavit, ¶ 15, **Exhibit B**). The plaintiff shut off his car, exited, and began walking toward Officer Stosuy, who was now positioned in front of his police vehicle. (Police Report, p. 2., **Exhibit A**) (Officer Stosuy Affidavit, ¶ 16, **Exhibit B**).

Officer Stosuy then ordered the plaintiff to place his hands on the trunk of the car, but the plaintiff refused and became argumentative and uncooperative. (Police

Report, p. 3, **Exhibit A**) (Officer Stosuy Affidavit, ¶ 16, **Exhibit B**).  Officer Stosuy attempted to forcibly place the plaintiff against his vehicle; the plaintiff pushed off the vehicle and attempted to resist Officer Stosuy's grasp. (Police Report, p. 3, **Exhibit A**) (Officer Stosuy Affidavit, ¶ 18, **Exhibit B**).  Officer Stosuy could not complete a search of the plaintiff for weapons as the plaintiff continued to struggle by pushing off the car and into Officer Stosuy, pulling away from Officer Stosuy's hold, and attempting to spin around. (Officer Stosuy Affidavit, ¶  18, 19, 24, **Exhibit B**).

Officer Proulx was on routine patrol when he heard Officer Stosuy's call for backup during the pursuit of the plaintiff. (Proulx Supplement Report, p. 1., **Exhibit C**) (Officer Proulx Affidavit, ¶ 8, **Exhibit D**).  When Officer Proulx arrived at the scene, he observed Officer Stosuy and the plaintiff struggling by the side of the vehicle, which was in the roadway and adjacent to roadway traffic.  (Proulx Supplement Report, p. 1., **Exhibit C**) (Officer Proulx Affidavit, ¶ 20, **Exhibit D**).  The roadway traffic on Route 5 at the incident scene was moderate to heavy, with vehicles passing at speeds between and/or over 30-45 miles per hour near Officer Stosuy and the plaintiff. (Officer Stosuy Affidavit, ¶ 20, **Exhibit B**) (Officer Proulx Affidavit,  ¶ 10, **Exhibit D**).  In consideration of the danger caused to nearby traffic and the plaintiff's continued struggle, Officer Proulx immediately approached the area and instructed the plaintiff to stop resisting or he would release the canine. (Proulx Supplement Report, p. 1., **Exhibit C**) (Officer Proulx Affidavit, ¶ 22, **Exhibit D**).  The plaintiff continued to resist Officer Stosuy, and Officer Proulx gave his police canine, Dakota, a command to engage the plaintiff. (Proulx Supplement Report, p. 1., **Exhibit C**) (Officer Proulx Affidavit, ¶ 12, **Exhibit D**).  Dakota complied and engaged the plaintiff on the thigh. (Police Report, p. 3, **Exhibit A**) (Proulx Supplement Report, p. 1., **Exhibit C**).  The plaintiff fell to the ground and began jabbing at Dakota's face and eyes, causing the dog to lose its grip and re-engage the plaintiff. (Proulx Supplement Report, p. 1.,

3

**Exhibit C**) (Officer Proulx Affidavit, ¶ 14, **Exhibit D**).  After approximately one minute, the plaintiff ended his resistance and Dakota was ordered to release the plaintiff's leg and return to Officer Proulx's police cruiser.  (Officer Proulx Affidavit, ¶ 15, 16, **Exhibit D**).  Officer Stosuy handcuffed the plaintiff while the plaintiff was on the ground. (Officer Stosuy Affidavit, ¶ 26, **Exhibit B**).

Sgt. Lisa Freeman arrived on the scene after the plaintiff had already been arrested, handcuffed and seated off the road and under a tree.  (Officer Stosuy Affidavit, ¶ 27, **Exhibit B**) (Officer Proulx Affidavit, ¶ 17, **Exhibit D**) (Sgt. Freeman Affidavit, ¶ 8, **Exhibit E**).  Sgt. Freeman did not witness the canine bite the plaintiff, or the manner in which Cutler was handcuffed. (Sgt. Freeman Affidavit,  ¶ 9, **Exhibit E**). Sgt Freeman observed that the plaintiff did not appear to be in any type of pain, but was obnoxious toward the officers, name calling, etc. (Sgt. Freeman Affidavit,  ¶ 12, **Exhibit E**).

In the rear passenger seat of the plaintiff's vehicle, in plain view, was several computer components, including computer keyboards. (Police Report, p. 4, **Exhibit A**) (Freeman Supplement Report, **Exhibit F**) (Officer Stosuy Affidavit, ¶ 28, **Exhibit B**).  A search of the backseat passenger compartment of Cutler's vehicle revealed that the keyboards had manufacturer's serial numbers obscured by black magic marker. (Police Report, p. 4, **Exhibit A**) (Freeman Supplement Report, **Exhibit F**) (Officer Stosuy Affidavit, ¶ 29, **Exhibit B**).  Sgt. Freeman had been investigating a string of commercial burglaries in the area involving computer and related equipment. (Sgt. Freeman Affidavit, ¶ 15, **Exhibit E**) (Freeman Supplement Report, **Exhibit F**).  Based on years of police training and experience, Sergeant Freeman knew and understood, as well as any other reasonable officer would, that obscuring or altering serial numbers on equipment is a criminal offense, and that the obscuring or altering of serial numbers is likely undertaken to conceal the identity of stolen equipment. (Sgt. Freeman

4

Affidavit, ¶ 16, 17, **Exhibit E**).  After observing the computer equipment and the obscured serial numbers, the officers searched the trunk of the plaintiff's vehicle in search of more possibly stolen computer equipment or other contraband/evidence. (Officer Stosuy Affidavit, ¶ 30, **Exhibit B**) (Sgt. Freeman Affidavit, ¶ 18, **Exhibit E**). While searching the trunk of the vehicle, the officers discovered a .223 caliber semiautomatic rifle with two fully loaded magazines holding 50 rounds of ammunition. (Police Report, p. 4, **Exhibit A**) (Officer Stosuy Affidavit, ¶ 31, **Exhibit B**).

The plaintiff was transported to police headquarters for booking.  Ambulance personnel arrived to give the plaintiff medical attention while at the police headquarters.  In conformance with policy and procedure, photographs were taken and the plaintiff. (Police Report, p. 4, **Exhibit A**) (Proulx Supplement Report, p. 2., **Exhibit C**).  The plaintiff was then transported to Manchester Memorial Hospital for continued treatment of the dog bite wounds.  (Police Report, p. 4, **Exhibit A**) (Proulx Supplement Report, p. 2., **Exhibit C**).

The plaintiff was arrested for interfering with a police officer, reckless endangerment in the second degree, altering manufacturer's serial numbers, traveling at an unreasonable speed, reckless driving, and engaging police in pursuit. (Police Report, p. 4., **Exhibit A**).  After bargaining with the prosecutor, the plaintiff pled guilty to the charge of traveling at an unreasonable speed in violation of Conn. Gen. Stat. §14-218a, and paid an $80 fine. (Criminal hearing transcript, pp. 1, 5., **Exhibit G**). The Court dismissed all of the other charges. (Criminal hearing transcript, p. 5., **Exhibit G**).

Officers Stosuy and Proulx became police officers with the Town of East Hartford in 1981 and 1983, respectively. (Officer Stosuy Affidavit, ¶ 33, **Exhibit B**) (Officer Proulx Affidavit, ¶ 18, **Exhibit D**).  Sgt. Freeman was hired as a police officer with the Town on January 18, 1994. (Sgt. Freeman Affidavit, ¶ 22, **Exhibit E**).

Officer Proulx's conduct surrounding the plaintiff's arrest was investigated by Sgt. Timothy Irwin.  (Irwin Supplement Report, p. 1, **Exhibit H**) (Sgt. Irwin Affidavit, ¶ 4, 5, 6, 7, **Exhibit I**) (Officer Proulx Affidavit, ¶ 19, **Exhibit D**).  After interviewing the plaintiff and Officer Proulx, in addition to reviewing Officer Proulx' Report, Sgt. Irwin determined that Officer Proulx's use of the canine was consistent with East Hartford Police Department policies and procedures. (Irwin Supplement Report, p. 1, **Exhibit H**) (Sgt. Irwin Affidavit, ¶  4, 5, 6, 7, 8, **Exhibit I**) (Officer Proulx Affidavit, ¶  22, **Exhibit D**).

## II. <u>PROCEDURAL BACKGROUND</u>

By way of Writ, Summons and Complaint dated October 28, 2002, the plaintiff initiated an action in the United States District Court, District of Connecticut, against Officer Proulx, Officer Stosuy, Sergeant Freeman, Jane or John Doe, Chief Mark Sirois, the Town of East Hartford, claiming injuries stemming from his arrest.

Specifically, <u>Count One</u> sets forth the a cause of action against the defendants, Officer Proulx, Officer Stosuy, Sergeant Freeman, Jane or John Doe, claiming a violation of Title 42 U.S.C. 1983 and 1988, based on an alleged unlawful arrest, malicious prosecution, illegal detention, unlawful search and seizure, deprivation of liberty, violation of the equal protection clause, and Forth and Fourteenth Amendment.  The plaintiff sets forth causes of action against Officers Proulx and Stosuy, only, as follows:

1. <u>Count Two</u>:  A violation of Title 42 U.S.C. 1983 and 1988, based excessive force, violation of the equal protection clause, and Forth and Fourteenth Amendment.

2. <u>Count Three</u>:  A violation of Title 42 U.S.C. 1983 and 1988 substantive due process rights under the Fourteenth Amendment.

3.  <u>Count Four</u>:  A violation of Section 7 and 9 of the Connecticut

Constitution.

<u>Count Five</u> of the plaintiff's Complaint sets forth a cause of action against Officer Proulx and the Town of East Hartford under Connecticut General Statutes section 22-357.  <u>Count Six</u> of the plaintiff's Complaint sets forth a cause of action against Chief Mark Sirois and the Town of East Hartford claiming that they ignored a history of prior illegal dog bites and failed to supervise and train its officers in proper use of force and constitutional provisions concerning searched and seizures.

The defendants filed their answer and affirmative defenses to the plaintiff's Complaint, denying all of the plaintiff's allegations as false.  The defendants also filed affirmative defenses, including the defense of qualified and governmental immunity.

## III.  <u>LEGAL STANDARD</u>

The court shall render summary judgment when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56c; <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 250 (1986).  A factual dispute is "genuine" when the evidence is such that a reasonable jury can return a verdict for the non-moving party.  <u>See</u> <u>Anderson</u>, 477 U.S. at 247-48.  A "material fact" is one whose resolution will effect the ultimate determination of a case.  <u>See</u> <u>id</u>.

In determining whether a material issue of fact exists, the court must resolve all ambiguities and draw all inferences against the moving party.  <u>See</u> <u>Anderson</u>, 477 U.S. at 255.  However, "[t]he mere existence of a scintilla of evidence in support of the non-movant's position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."  <u>Hayut v. State University of New York</u>, 352 F.3d 733, 743 (2nd Cir. 2003).  "[T]he nonmoving party must come forward with

specific facts showing that there is a <u>genuine</u> <u>issue</u> <u>for</u> <u>trial</u>." <u>Caldarola v. Calabrese</u>, 298 F.3d 156, 160 (2nd Cir. 2002), *quoting*, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986) (underline in original).

"[A]s to issues on which the nonmoving party bears the burden of proof, the moving party may simply point out the absence of evidence to support the nonmoving party's case." <u>Nora Beverages, Inc. v. Perrier Group of Am., Inc.</u>, 164 F.3d 736, 742 (2nd Cir. 1998). A non-moving party may not rely on mere allegations, legal conclusions, unsupported statements, or a denial of the pleadings. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986); <u>Kulak v. City of New York</u>, 88 F.3d 63, 71 (2nd Cir. 1996) ("conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment.").

## IV.    LAW AND ARGUMENT

### A. The Plaintiff's Claims Against The Defendant Jane/John Doe Are Barred As A Matter Of Law (Count One – Jane or John Doe).

The plaintiff's Count One claims against Jane or John Doe fails as a matter of law because an unknown "John Doe" is not a valid legal entity amendable to suit, and the applicable statute of limitations has expired.

Under F.R.C.P. 4(m), service of the summons and complaint upon a defendant is required "within 120 days after the filing of the complaint… [or] upon motion [the court] shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time…." F.R.C.P. 4(m). In this case, more than two years have passed since the filing of the Complaint on October 31, 2002. The plaintiff cannot now amend the pleadings.

Additionally, there is a three-year statute of limitations for the plaintiff's §1983 claims, a period borrowed from Connecticut's tort statute of limitations, Conn. Gen.

Stat. §52-577.  See Williams v. Walsh, 558 F.2d 667 (2nd Cir. 1977).  As such, the time for bringing an action against Jane/John Doe expired on November 6, 2004.

The Second Circuit recognizes that ""John Doe" pleadings cannot be used to circumvent statutes of limitations because replacing a "John Doe" with a named party in effect constitutes a change in the party sued." Barrow v. Wethersfield Police Department, 66 F.3d 466 (2nd Cir. 1995), quoting, Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1075 (2nd Cir. 1993).  Moreover, an amended complaint replacing a "John Doe" defendant with that defendant's correct name would not relate back under Rule 15(c)(3).  See Barrow v. Wethersfield Police Dep't, 66 F.3d at 470 (where addition of new names is not to correct a mistake but to correct a lack of knowledge, the requirements of Rule 15(c) for relation back are not met), modified, 74 F.3d 1366 (2nd Cir. 1996).

### B.    The Plaintiff's False Arrest, False Imprisonment, And Malicious Prosecution Claims Fail As A Matter Of Law (Count One).

#### 1.    There Was Probable Cause For The Plaintiff's Arrest.

The "existence of probable cause for an arrest totally precludes [a] Section 1983 claim for unlawful arrest, false imprisonment or malicious prosecution." Bourguignon v. Guinta, 247 F. Supp.2d 189, 194 (D. Conn. 2003); see also, Weyant v. Oakst, 101 F.3d 845, 852 (2nd Cir. 1996), cert. denied, 517 U.S. 1189 (1996) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."); Williams v. Lopes, 64 F. Supp.2d 37, 46-47 (D. Conn. 1999) ("Plaintiff's claim for false imprisonment will not survive if defendants can establish the existence of probable cause for confinement."); QSP Inc. v. The Aetna Casualty & Surety Co., 256 Conn. 343, n.16 (2001) (An "action of malicious prosecution lies where a civil or criminal action has been instituted with malice and without probable

cause….")  "[T]he existence of probable cause is a complete defense…."  <u>Garcia v. Gasparri</u>, 193 F. Supp.2d 445, 449 (D. Conn. 2002), <i>citing</i>, <u>Curley v. Village of Suffern</u>, 268 F.3d 65, 69-70 (2nd Cir. 2001); <u>see</u> <u>also</u>, <u>Singer v. Fulton County Sheriff</u>, 63 F.3d 110, 118 (2nd Cir. 1995).

Probable cause exists when the officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'"  <u>Curley</u>, 268 F.3d at 69-70; <u>Martinez v. Simonetti</u>, 202 F.3d 625, 634 (2nd Cir. 2000); <u>Singer</u>, 63 F.3d at119, <i>quoting</i>, <u>O'Neill v. Town of Babylon</u>, 986 F.2d 646, 650 (2nd Cir. 1993).  To establish probable cause for an arrest, the officer need only establish a "probability or a substantial chance of criminal activity, not an actual showing of such activity."  <u>Illinois v. Gates</u>, 462 U.S. 213, 244, n.13 (1983).

In this case, it is undisputed that the plaintiff was traveling at approximately 86 miles per hour, an unreasonable rate of speed, when Officer Stosuy detected him on the laser radar.  (Criminal hearing transcript, pp. 3, 5., **Exhibit I**).  As such, there was undeniably probable cause for the plaintiff's arrest for the following charges: (i) traveling unreasonably fast; (ii) speeding; and (iii) reckless driving.  Pursuant to Conn. Gen. Stat. §14-218a, any speed in excess of the posted speed limit is prima facie evidence that the driver's speed was unreasonable.  In this case, the posted speed limit was 45 mph.  (Police Report, p. 1., **Exhibit A**).  Traveling in excess of 55 mph also constitutes speeding in violation of Conn. Gen. Stat. §12-219(a).  Reckless driving is 85 mph in the State of Connecticut.  <u>See</u> Conn. Gen. Stat. §14-222(a).  A first violation of reckless driving warrants a fine of $100 to $300 and/or up to thirty days imprisonment.  <u>See</u> Conn. Gen. Stat. §14-222(b).

Probable cause is also established by the fact that the plaintiff was convicted of traveling at an unreasonable rate of speed in violation of §14-218a. (Criminal hearing

transcript, pp. 1, 5, **Exhibit I**).  "[A] conviction is conclusive proof of probable cause and a plaintiff may not challenge probable cause in the face of a valid judgment of conviction."  Because there was probable cause for his arrest, the plaintiff cannot prevail on his false arrest, false imprisonment or malicious prosecution claims.

### 2.    The Plaintiff's Arrest Did Not Result In A Favorable Disposition.

The plaintiff's false arrest, false imprisonment, and malicious prosecution claims also fail because the plaintiff's arrest did not terminate in his favor.  "It is well settled in the Second Circuit that in order to prevail on a cause of action for false arrest or malicious prosecution, a plaintiff must prove that the underlying criminal proceeding terminated in his favor."  Birdsall v. City of Hartford, 249 F. Supp.2d 163 (D. Conn. 2003), *citing*, Roesch v. Otarola, 980 F.2d 850, 853 (2nd Cir. 1992).  Similarly, "[I]t is clear that if the plaintiff has been convicted of either of the crimes with which he was charged, or of any lessor included offenses, this would be conclusive proof of probable cause which would defeat his claim of false imprisonment."  Konon v. Fornal, 612 F. Supp. 68, 71 (D. Conn. 1985).

In order to sustain a claim for malicious prosecution, false arrest or false imprisonment, the plaintiff must demonstrate, among other things, that the prosecution terminated in his favor.  See Murphy v. Lynn, 118 F.3d 938, 947 (2nd Cir. 1997); see also, Roesch, 980 F.2d at 853; Konon, 612 F. Supp. at 71.  "Where a prosecution did not result in an acquittal, it is generally not deemed to have ended in favor of the accused, for purposes of a malicious prosecution claim, unless its final disposition is such as to indicate the accused's innocence."  Fulton v. Robinson, 289 F.3d 188, 196 (2nd Cir. 2002).  "[I]f the outcome was the result of a compromise to which the accused agreed, or an act of mercy requested or accepted by the accused … it is not a termination in favor of the accused for purposes of a malicious prosecution claim."

Fulton, 289 F.3d at 196, *citing,* Posr v. Court Officer Shield # 207, 180 F.3d 409, 418
(2nd Cir. 1999).

"A person who thinks there is not even probable cause to believe he committed
the crime with which he is charged must pursue the criminal case to acquittal."
Roesch, 980 F.2d at 853 (holding that "a dismissal pursuant to the Connecticut
accelerated rehabilitation program is not a termination in favor of the accused for
purposes of a civil rights suit").  In Pouncey v. Ryan, 396 F. Supp. 126, 127 (D. Conn.
1975), the plaintiffs alleged that the defendant officers perjured themselves in affidavits
submitted in support of applications for a search warrant and a bench warrant for the
plaintiffs' arrest.  The plaintiffs, however, pled guilty.  See Id.  The district court granted
summary judgment in favor of the defendants because of this conviction.  The court
explained:

> Harsh as this rule may seem, especially where the tort plaintiff alleges
> that probable cause for his arrest was made to appear only because of
> police perjury, it nevertheless reflects a policy choice that has survived
> repeated attack over a period of many years. …  The application of this
> policy is most appropriate where, as here, the conviction resulted from a
> voluntary plea of guilty.

Pouncey, 396 F. Supp. at 127-28 (internal citations omitted).

In this case, the plaintiff voluntarily pled guilty to the charge of traveling
unreasonably fast in violation of General Statute §14-218a. (Criminal hearing
transcript, p. 1, **Exhibit I**).  He did not pursue his criminal case to acquittal.  Therefore,
the plaintiff's false arrest, false imprisonment and malicious prosecution claims all fail
as a matter of law.


    **C.**    <u>**The Plaintiff's Unlawful Search And Seizure Claim Fails As A Matter
Of Law (Count One).**</u>

The plaintiff alleges that the defendants unlawfully searched his vehicle without a warrant and without probable cause. See Complaint, ¶24. This claim fails because (1) the computer equipment in the passenger seat was in plain view, and (2) there was probable cause for the plaintiff's arrest justifying a search of the passenger compartment of his vehicle. Upon the search of the passenger compartment, there developed probable cause for searching the trunk for additional likely stolen computer equipment or other contraband or evidence.

Once a police officer "has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that vehicle." New York v. Belton, 453 U.S. 454, 460, 101 S.Ct. 2860 (1981); see also, U.S. v. Perea, 986 F.2d 633, 643 (2nd Cir. 1993). A police officer may then search the trunk if "probable cause exists to believe the vehicle contains contraband or other evidence of a crime." U.S. v. Gaskin, 364 F.3d 438, 456 (2nd Cir. 2004); see also, U.S. v. Brown, 374 F.3d 1326, 1327 (D.C. Cir. 2004). This standard requires only a "fair probability" that such contraband or evidence exists, and it is well-established that "experience and training may allow a law enforcement officer to discern probable cause from facts and circumstances where a layman might not." Id. at 457.

In this case, the officers conducted a search of the passenger compartment of the plaintiff's vehicle incident to the plaintiff's arrest. (Police Report, p. 4, **Exhibit A**). Pursuant to Belton, that search was unquestionably lawful. The search revealed several computer components, including keyboards with manufacturer's serial numbers obscured by black magic marker. (Police Report, p. 4, **Exhibit A**) (Sgt. Freeman Supplemental Report, **Exhibit F**) (Sgt. Freeman Affidavit, ¶ 14, **Exhibit E**). There had been a string of commercial burglaries in East Hartford involving computer and related equipment. (Sgt. Freeman Supplemental Report, **Exhibit F**). Based on

13

years of training and experience, Sgt. Freeman knew and understood that obscuring serial numbers on computer equipment is likely undertaken to conceal the identity of equipment that has been stolen. (Sgt. Freeman Affidavit, ¶ 16, 17, **Exhibit E**).  Based on the recent burglaries and the finding of computer components with obscured serial numbers, there was probable cause to believe that contraband or other evidence of a crime could be found in the trunk.  As such, the subsequent search of the trunk was also lawful.  See Gaskin, 364 F.3d at 456; Brown, 374 F.3d at 1327.

### D.    The Individual Defendants Are Entitled To Qualified Immunity As To The Plaintiff's §1983 Claims (Counts One, Two And Three).

Qualified immunity shields police officers from suits for damages under 42 U.S.C. §1983, unless their actions violate clearly established rights of which an objectively reasonable official would have known.  See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation.  [It] is an immunity from suit rather than a mere defense to liability …"  Saucier v. Katz, 533 U.S. 194, 200-01 (2001) (citations omitted; internal quotation marks omitted).  The summary judgment standard to be applied in cases involving the affirmative defense of qualified immunity was articulated in Lennon v. Miller, 66 F.3d 416, 422 (2nd Cir. 1995), as follows:

> To establish qualified immunity, a defendant must demonstrate either that his conduct did not violate any of the plaintiff's . . . clearly established rights, . . . that would have been known to a reasonable person or that it was objectively reasonable for him to believe that his . . . actions did not violate any of those clearly established rights.

The availability of this defense does not depend on whether the plaintiff's rights were in fact violated.  See Lennon, 66 F.3d at 422.  For instance, "law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is

present, and we have indicated that in such cases those officials - - like other officials who act in ways they reasonably believe to be lawful - - should not be personally liable." Id. at 423, *citing*, Anderson v. Creighton, 483 U.S. 635, 641 (1987). "[T]he objective reasonableness test is met … if officers of reasonable competence could disagree on the legality of the defendant's actions." Lennon, 66 F.3d at 420, *quoting*, Malley v. Briggs, 475 U.S. 341.

1.   **The Defendants Are Entitled To Summary Judgment As To The Plaintiff's False Arrest, False Imprisonment & Malicious Prosecution Claims.**

In the context of applying the defense of qualified immunity to allegations asserting a lack of probable cause, the issue for immunity purposes is not probable cause in fact but "*arguable probable cause*." See Martinez v. Simonetti, 202 F.3d 625, 634 (2nd Cir. 2000); Lee v. Sandberg, 136 F.3d 94, 102 (2nd Cir. 1997). "Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law." Gold v. City of Miani, 121 F.3d 1442, 1445 (11th Cir. 1997) (per curiam), *cited in*, Lee, 136 F.3d at 102.    This is the test to be used for the plaintiff's false arrest, false imprisonment and malicious prosecution claims, as lack of probable cause is an element of each of these claims.

According to Officer Stosuy, the plaintiff was traveling 86 miles per hour in a posted 45 mph zone when Stosuy detected him on the laser radar. (Police Report, p. 1., **Exhibit A**).  The plaintiff has conceded that he was traveling at an unreasonable rate of speed. (Criminal hearing transcript, pp. 3, 5., **Exhibit I**).  Indeed, the plaintiff pled guilty to traveling unreasonably fast in violation of General Statute §14-218(a). As such, the plaintiff cannot, as a matter of law, establish that there was no probable cause for his arrest and prosecution.

15

2.     **The Defendants Are Entitled To Summary Judgment As To The Plaintiff's Excessive Force Claim.**

"To establish a Fourth Amendment excessive force claim a plaintiff must show that the force used by the officer was, in light of the facts and circumstances confronting him, 'objectively unreasonable' under Fourth Amendment standards. Finnegan v. Fountain, 915 F.2d 817, 823 (2nd Cir. 1990), *citing*, Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1685, 1873 (1989).  In this case, the plaintiff's claim of unreasonable and excessive force fails because the defendant officers acted with objective reasonableness under the circumstances and are therefore shielded from liability by the doctrine of qualified immunity.

The examination of the reasonableness of an officer's actions is not based upon a review of all the facts long after the events themselves are over.  Rather, "the reasonableness of a particular use of force is judged from the perspective of a reasonable officer on the scene." Graham, 490 U.S. at 396.  Factors for consideration include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Finnegan, 915 F.2d at 823, *quoting*, Graham, 490 U.S. at 396.  Unquestionably, "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 397.  Further, a finding of unlawfulness by the defendant officer must be apparent in light of pre-existing law.  Finnegan, 915 F.2d at 823, *citing*, Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034 (1987).

"Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use come degree of physical coercion or threat thereof to effect it." Graham, 490 U.S. at 396.  This right

includes the use of a police canine.  See Holeman v. City of New London, No. 3:00cv1608 (D. Conn. 2004) (attached as **Exhibit R**).  In Holeman, the court found that the plaintiff's decedent had, during a traffic stop, made vague, potentially threatening statements and sudden unauthorized movements.  The court held that reasonable officers could believe that the use of a police canine was necessary to subdue the decedent under such circumstances, and that the officers were therefore entitled to qualified immunity as to the excessive force claim for use of the canine.  Id. at *19.

In Carey v. Cassista, 939 F. Supp. 136, 137 (D. Conn. 1996), the plaintiff was pulled over on the suspicion of driving while under the influence of alcohol.  After initially cooperating with the local police, the plaintiff fled from his vehicle and into the woods.  See Id.  A State trooper spotted the plaintiff, stopped his cruiser, and gave a warning to the suspect that if he did not stop he would release a trained canine.  See Id. at 138.  The plaintiff did not respond or stop.  See Id.  After watching the plaintiff jump a fence, the trooper ordered his canine to "get him," and the canine ran, vaulted over the same fence and out of sight on the other side.  See Id.  The troopers found the plaintiff struggling with and kicking the canine.  See Carey, 939 F. Supp. at 138.  The handling trooper ordered the canine to break and watch him, and the dog obeyed.  See Id.  The plaintiff, however, attempted to get up and move again.  See Id.  Consistent with his training, the canine re-engaged the suspect, who assaulted the canine by kicking and punching it and struggling to get away.  See Id.  The plaintiff received seventy-six stitches to close and treat "unsightly" dog bites on his legs, buttocks, back, side and right arm.  See Id. at 139.

The Court observed that the suspects' injuries were primarily due to his own failure to heed the directions of the trooper.  See Id. at 143.  The Court applied the Graham factors, finding that although the crimes with which the plaintiff was suspected

were not severe, he did pose an immediate threat to the officer in that the trooper did not know whether the plaintiff might be armed, and he was "actively resisting arrest or attempting to evade arrest by flight." Id. Accordingly, the Court entered judgment in favor of the defendant trooper. Id.

Similarly, in Matthews v. Jones, 35 F.3d 1046 (6th Cir. 1994), the plaintiff was pulled over for intoxication and speeding, when he fled on foot into a wooded area. Id. The police officers warned the plaintiff that they would release a canine if he did not surrender. Id. Hearing no response, the officers released the canine. Id. Upon his being located, the plaintiff struggled with the canine, causing the dog to reposition his bite. Id. The Sixth Circuit held that the officers' actions did not violate the Constitution given that a reasonable officer "would have believed that [the plaintiff] posed a threat to the officers' safety as well as the safety of others." Id. at 1051.

In this case, the defendant officers are entitled to qualified immunity because their actions were objectively reasonable under the circumstances. Specifically, Officer Proulx was faced with a decision to deploy his canine after the plaintiff refused to discontinue his struggle with Officer Stosuy near dangerous, high volume traffic. Additionally, the plaintiff had not been searched for weapons and his continued combativeness only intensified the danger that the plaintiff intended to inflict bodily harm upon the officers. Indeed, even after the canine engaged the plaintiff, the plaintiff continued to fight by using martial arts moves, punching and gouging at the canine's eyes. The plaintiff never stopped resisting the plaintiff's efforts to arrest him until Officer Stosuy finally was able to handcuff him.

Based on the facts of this case, the defendants', Officer Proulx' and Officer Stosuy's, use of force was objectively reasonable; thus, the defendants are shielded by way of their qualified immunity from the plaintiff's excessive force claims.

**E.    The Plaintiff's Fourteenth Amendment Due Process And Excessive Force Claims Fail Because They Are Covered By The Specific Text Of The Fourth Amendment (Counts One, Two, And Three).**

In the First Count, the plaintiff alleges that he suffered a deprivation of liberty without due process in violation of the Fourteenth Amendment to the United States Constitution. See Plaintiff's Complaint, First Count, ¶44. In the Second Count, the plaintiff alleges that he was subjected to excessive force in violation of the Fourteenth Amendment. See Plaintiff's Complaint, Second Count, ¶47. And in the Third Count, the plaintiff alleges that the defendants deprived him of his substantive due process rights in violation of the Fourteenth Amendment. See Plaintiff's Complaint, Third Count, ¶49. These claims all fail as a matter of law.

The Fourteenth Amendment states, in pertinent part, that: "[n]o State shall … deprive any person of life, liberty or property, without due process of law…." However, the United States Supreme Court has held that where a claim is covered by the specific text of an amendment to the United States Constitution (such as the 4th Amendment), it is that amendment and not the more generalized notion of due process that controls. See Graham v. Connor, 490 U.S. 386 (1989); Albright v. Oliver, 510 U.S. 266 (1994); and Town of Sacramento v. Lewis, 523 U.S. 833 (1998). In Graham, the Supreme Court held that claims of excessive force brought under Section 1983 must be analyzed under the explicit textual sources of protection found in the Fourth [Amendment], not the more general standard of "substantive due process." Id. at 490. In Albright, the plaintiff alleged that the defendants had violated his right to "substantive due process" by initiating a criminal prosecution without probable cause. Id. at 272. The Supreme Court reaffirmed Graham and held that the plaintiff's false arrest claims under §1983 are to be evaluated under the Fourth Amendment and not under the Fourteenth Amendment substantive due process provision. Id. at 274. The

Court noted that "[t]he Framers considered the subject matter deprivations of liberty, and drafted the Fourth Amendment to address it." Id. at 274.

The alleged wrongful conduct in this case derives from the plaintiff's alleged deprivation of his liberty and the claimed use of excessive force by Officer Proulx and Officer Stosuy. See Plaintiff's Complaint, First Count, ¶44; and Second Count, ¶47. Pursuant to Graham and its progeny, these claims should be analyzed under the Fourth Amendment, not the Fourteenth Amendment.

**F.      The Plaintiff's Fourteenth Amendment Due Process And Equal Protection Claims Fail Because The Plaintiff Was Not Subject To A Constitutional Deprivation (Counts One, Two And Three).**

The plaintiff's Fourteenth Amendment due process and equal protection claims fail as a matter of law because the plaintiff was not deprived of any of his Constitutional rights.

Section 1983 provides a right of action against any person who, acting under color of law, deprives another of a right, privilege, or immunity secured by the Constitution or federal laws. See 42 U.S.C. § 1983; Rendell-Baker v. Kohn, 457 U.S. 830, 835, 102 S.Ct. 2764 (1982). Section 1983 does not create any substantive rights, but rather provides a procedure to redress the deprivation of federal rights that are guaranteed elsewhere. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 816, 105 S.Ct. 2427 (1985); Thomas v. Roach, 165 F.3d 137, 142 (2nd Cir. 1999). It is well established that in order to state a claim under §1983, a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States. Eagleston v. Guido, 41 F.3d 865 (2nd Cir. 1994).

20

### 1.    There Was No Substantive Due Process Violation.

The United States Supreme Court has described the Due Process Clause of the Fourteenth Amendment as a "constitutional guarantee of respect for those personal immunities which … are 'so rooted in the traditions and conscience of our people as to be ranked as fundamental,' or are 'implicit in the concept of ordered liberty.'" Rochin v. California, 342 U.S. 165, 72 S.Ct. 205 (1952) (internal citations omitted), citing, Palko v. Connecticut, 302 U.S. 319, 325 (1937). "The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." Albright v. Oliver, 510 U.S. 266, 272; 114 S.Ct. 807, 812 (1994).

In a due process challenge to abusive conduct by a state actor, the court must determine "whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." County of Sacramento v. Lewis, 523 U.S. 833, 848, 118 S.Ct. 1708 (1998). The defendant officer's conduct must be "'arbitrary, conscience-shocking, or oppressive in a constitutional sense,' and not merely 'incorrect or ill-advised.'" Zandhri, 228 F. Supp.2d 167, 178 (D. Conn. 2002), citing, Kaluczky v. City of White Plains, 57 F.3d 202, 211 (2nd Cir. 1995). "Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." Natale v. Town of Ridgefield, 170 F.3d 258, 262-62 (2nd Cir. 1999).

Where, as here, the defendant officers had a reasonable basis for believing that probable cause existed, there can be no substantive due process violation arising from the plaintiff's arrest. See Zandhri, 228 F. Supp.2d at 178. Similarly, the defendants' use of force upon the plaintiff was objectively reasonable in light of his physical resistance. As a matter of law, the defendants' actions do not shock the conscience.

### 2.    There Was No Equal Protection Violation.

The Equal Protection Clause of the Fourteenth Amendment is "essentially a direction that all persons similarly situated be treated alike."  City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439, 105 S.Ct. 3249 (1985).  In order to establish a violation of the Equal Protection Clause, the plaintiff must show both that "(1) the person, compared with others similarly situated, was selectively treated; and (2) that such treatment was based on impermissible consideration such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  LeClair v. Saunders, 627 F.2d 606, 609-10 (2nd Cir. 1980), cert. denied, 450 U.S. 959, 101 S.Ct. 1418; Lisa's Party City, Inc. v. Town of Henrietta, 185 F.3d 12, 15-17 (2nd Cir. 1999).  Intentional discrimination must be established.  See Ricketts v. City of Hartford, 74 F.3d 1397, 1407 (2nd Cir. 1996).

In this case, the plaintiff has failed to set forth any evidence of intentional discrimination on the part of the defendant officers.  First, there is no evidence that the plaintiff was treated differently than other similarly situated individuals.  Second, there is no evidence of a malicious intent to injure or an otherwise discriminatory motive.  As such, the defendants are entitled to summary judgment in their favor.

### G.    The Defendants Are Entitled To Governmental Immunity As To The Plaintiff's Common Law Tort Claims (Count Four).

Generally, a municipal employee has a qualified immunity in the performance of governmental or discretionary acts, but he may be liable for the misperformance of ministerial acts.  See Purzycki v. Fairfield, 244 Conn. 101, 107 (1998); Elliot v. City of Waterbury, 245 Conn. 385, 411 (1998); Evon v. Andrews, 211 Conn. 501, 505 (1989); Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 180-81 (1988). Governmental acts are performed wholly for the direct benefit of the public and are

supervisory or discretionary in nature.  See Heigl v. Bd. of Ed., 218 Conn. 1, 5 (1991).

"The hallmark of a discretionary act is that it requires the exercise of judgment."

Lombardi v. Edward J. Peters., P.C., 252 Conn. 623, 628 (2000).  In contrast, the term

"'ministerial' refers to a duty which is to be performed in a prescribed manner without

the exercise of judgment or discretion."  Evon, 211 Conn. at 505; Mulligan v. Rioux,

229 Conn. 716, 727 (1994).  "[T]he ultimate determination of whether qualified

immunity applies is ordinarily a question of law for the court…."  Purzycki, 244 Conn.

at 107, *citing*, Mulligan, 229 Conn. at 736.

Policing the community and investigating those who break the law is a

governmental function that requires the exercise of discretion.  See Gordon, 208

Conn. at 180-81.  Specifically, the decision to arrest a suspect and the manner of

conducting an investigation both involve discretionary actions.  See Lipka v. Madoule,

2001 Ct. Sup. 17101 (Dec. 17, 2001); Mikita v. Barre, 2001 Ct. Sup. 6074 (May 21,

2001); Anderson v. City of New London, 1999 Ct. Sup. 2841 (Mar. 4, 1999); Castorina

v. Stewart, 1998 Ct. Sup. 9118 (June 3, 1998); Elinsky v. Marlene, 1997 Ct. Sup.

11144 (Oct. 31, 1997) (Copies attached as **Exhibit S**).  As the Connecticut Supreme

Court noted, "we do not think that the public interest is served by allowing a jury of

laymen with the benefit of 20/20 hindsight to second-guess the exercise of a

policeman's discretionary professional duty.  Such discretion is no discretion at all."

Shore v. Stonington, 197 Conn. 147, 157 (1982).

In this case, the plaintiff's claims arise directly from his arrest on November 6,

2001.  The decision to effectuate an arrest, however, is the very type of discretionary

governmental activity to which the doctrine of governmental immunity applies.  See

e.g., Gordon, 208 Conn. at 180-81.  As such, the defendants are entitled to

governmental immunity.

**H.** **The Plaintiff's Common Law Tort Claims Fail As A Matter Of Law (Count Four).**

   **1.** **The Plaintiff's False Arrest, False Imprisonment and Malicious Prosecution Claims Fail For The Same Reasons As His §1983 Fourth Amendment Claims.**

The plaintiff's common law false arrest, false imprisonment and malicious prosecution claims fail for the same reasons as his §1983 claims.  First, there was probable cause for the plaintiff's arrest.  Second, the plaintiff's arrest did not result in a favorable termination.

"Whether a constitutional claim or a claim under state tort law, a claim for false arrest, false imprisonment, or malicious prosecution may be established only if there was no probable cause to support the plaintiff's arrest and detention." Horton v. Brookfield, No. 3:98cv01834 (JCH) (D. Conn. 2001), *citing*, Zanghi v. Inc. Village of Old Brookville, 752 F.2d 42 (2nd Cir. 1985); Simpson v. Saroff, 741 F. Supp. 1073, 1077 (S.D.N.Y. 1990).  Probable cause is an absolute defense to these claims. Horton, *citing*, Vandersluis v. Weil, 176 Conn. 353, 356, 407 A.2d 982 (1978).  The issue of whether the particular facts establish probable cause presents a question of law.  See id.  In this case, there was, as a matter of law, probable cause for the plaintiff's arrest.  See §B1 above.

In addition, under Connecticut law, a plaintiff may not prevail on a false arrest, false imprisonment or malicious prosecution claim unless there was a favorable termination of the underlying criminal charges.  See Beinhorn v. Saraceno, 23 Conn. App. 487, 490, n. 1, 582 A.2d 208 (1990) (addressing false arrest & malicious prosecution claims), *citing*, McHale v. W.B.S. Corp., 187 Conn. 444, 447, 446 A.2d 815 (1982); Outlaw v. City of Meriden, 43 Conn. App. 387, 392, 682 A.2d 1112 (1996) (addressing false arrest and false imprisonment claims).  In this case, the defendants

are entitled to summary judgment because the criminal charges against the plaintiff did not terminate in his favor.  See §B2 above.

**2.    The Plaintiff's Assault And Battery And Intentional Infliction Of Emotional Distress Claims Are Subject To Dismissal As The Force Used By The Defendant Officers Was Justified Under Connecticut Law.**

The plaintiff alleges that the defendant officers subjected him to an intentional assault and battery and intentional infliction of emotional distress.  The defendant officers' use of force, however, was justified by state statute.  Connecticut General Statute §53a-22 states, in relevant part, as follows:

(a) A peace officer … is justified in using physical force upon another person when and to the extent he reasonably believes such to be necessary to: (1) effect an arrest or prevent the escape from custody of a person whom he reasonably believes to have committed an offense … or (2) defend himself or a third person from the use of imminent use of physical force while effecting or attempting to effect an arrest or while preventing or attempting to prevent escape.

The non-deadly force used in this case was certainly reasonable, given the plaintiff's refusal to comply with the officers' verbal commands and physical resistance.

**3.    The Plaintiff's Assault And Battery Claim Fails Because The Defendant Officers Did Not Use An Unreasonable Amount Of Force.**

To establish a claim for assault and battery, the plaintiff must prove that the defendant officers applied force or violence, and that said force or violence was unlawful.  See Williams v. Lopes, 64 F. Supp.2d 37, 47 (D. Conn. 1999), *citing*, Moriarty v. Lippe, 162 Conn. 371, 389, 294 A.2d 326 (1972).  Since the defendants'

use of force was lawful in this case, the plaintiff's assault claim must fail as a matter of law.

**4.    The Plaintiff's Intentional Infliction Of Emotional Distress Claim Fails Because The Alleged Conduct Was Not Extreme And Outrageous As A Matter Of Law.**

In order to prevail on a cause of action for intentional infliction of emotional distress, the plaintiff must establish four elements: "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that the emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." Petyan v. Ellis, 200 Conn. 243, 253, 510 A.2d 1337 (1986). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." 1 RESTATEMENT (SECOND) OF TORTS §46, p. 73, comment (d). In addition, the conduct must be "especially calculated to cause, and does cause mental distress of a very serious kind." DeLaurentis v. New Haven, 220 Conn. 225, 266 (1991); W. Prosser & W. Keeton, Torts (5th Ed. 1984) §12, p. 64.

In Appleton v. Board of Educ. of Stonington, 254 Conn. 205, 211 (2000), the plaintiff, a teacher, alleged that the defendants made condescending comments to her in front of colleagues; alerted her daughter that she "had been acting differently" and that she should take a few days off; called the police, who escorted the plaintiff from the building; subjected the plaintiff to two psychiatric examinations; and forced the plaintiff to take a suspension and leave of absence, and ultimately forced her to resign. Reversing the Appellate Court, the Supreme Court concluded that the alleged

occurrences, although distressing, did not constitute extreme and outrageous conduct for purposes of an intentional infliction of emotional distress claim.  Id. at 211.

**I.**    **The Plaintiff's Claim Pursuant To Article First, §§7 And 9, Of The Connecticut Constitution Fails As A Matter Of Law (Count Four).**

In Count Four, the plaintiff also alleges a violation of his rights under Article First, §§7 and 9 of the Connecticut Constitution.  Article First, §7 provides, in pertinent part, that "[t]he people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures…."  Article First, §9 states that "[n]o person shall be arrested, detained or punished, except in cases clearly warranted by law."  The Connecticut Constitution does not, on its face, authorize a private cause of action for money damages.  Causes of action have been allowed under limited circumstances only, and only after the Court determines that the plaintiff lacks any other adequate remedy at law.

"The source of judicially created private causes of action seeking damage for constitutional violations is the United States Supreme Court case of Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)."  Aselton v. Town of East Hartford, No. X07-CV01 0079187S (Dec. 3, 2002) (Sferrazza, J.) (attached as **Exhibit T**).  In Bivens, the Court recognized a cause of action for money damages against federal agents for a violation of the Fourth Amendment's protection against unreasonable searches and seizures.

The Connecticut Supreme Court has consistently looked to Bivens and its federal progeny as a guide in determining whether to create a *Bivens* action for alleged state constitutional violations.  See Aselton, supra; Kelley Property Development, Inc. v. Lebanon, 226 Conn. 314, 334-38 (1993); and ATC Partnership v. Windham, 251 Conn. 597, 613-14 (1999).  Thus far, the Court has been reluctant to

create such private causes of action.  See generally, ATC Partnership, (declining to recognize a cause of action for an alleged violation of substantive due process rights under article first, § 8); Kelley Property Development, 226 Conn. 314 (1993) (same).  In Kelley Property, the Court referenced the *Bivens* line of Supreme Court cases and noted that, as a general rule, a plaintiff should not be able to maintain a *Bivens* action unless he can establish that he would otherwise be without any remedy.  See id. at 337-38, 339.

The Connecticut Supreme Court has recognized a cause of action for money damages in only one limited circumstance.  See Binette v. Sabo, 244 Conn. 23 (1998).  In Binette, the Court allowed a claim for violations of article first, §§7 and 9 of the state constitution for an unreasonable search and seizure and unlawful arrest by municipal police officers.  Id. at 49-50.  The allegations of Binette were compelling.  The chief and one of his officers allegedly entered the plaintiffs' home without permission or a warrant.  See id. at 26.  The chief allegedly threatened the wife with arrest and imprisonment and pushed her into a wall and over a table.  See id.  Then, outside the home, the chief allegedly slammed the husband's head repeatedly against a car, and the other officer then struck the husband in the head and kicked him while he was on the ground experiencing an epileptic seizure.  See id.

The Binette Court made clear that its "decision to recognize a … remedy in this case does not mean that a constitutional cause of action exists for every violation of our state constitution."  Id. at 47.

In this case, there was undeniably probable cause for the plaintiff's arrest, as well as a lawful search of the plaintiff's vehicle.  See §§B and C above.  As mentioned above, the Connecticut Supreme Court has looked to federal law for guidance in analyzing claims under its state constitution.  "[I]t stands to reason that the Connecticut Supreme Court would also follow federal precedent when determining the parameters

of an unlawful arrest [or an unreasonable search and seizure] claim under the state constitution." Birdsall v. City of Hartford, 249 F. Supp.2d 163, 172 (D. Conn. 2003). As such, the plaintiff's claims under the state constitution should fail for the same reasons as his §1983 claims.

In addition, the plaintiff's claims should fail because he has failed to establish that he has no other recourse available. See Kelley Property, 226 Conn. at 337-39. Indeed, the plaintiff seeks redress under the federal constitution, Connecticut General Statutes and the common law.

Assuming *arguendo* that the plaintiff can set forth a cause of action under the Connecticut Constitution against the individual defendants, his claim against the Town of East Hartford must nonetheless fail. To date, no Connecticut court has recognized a *Bivens* action against a municipal entity, as opposed to an individual, for any alleged state constitutional violation. On the contrary, the Superior Court has specifically held that a *Bivens* action for an alleged constitutional violation is not cognizable against a municipality. See Aselton, supra.

**J.     The Plaintiff's Claim Pursuant To Connecticut's Dog Bite Statute, Conn. Gen. Stat. §22-357, Fails As A Matter Of Law (Count Five).**

Connecticut General Statute §22-357 provides as follows:

> If any dog does any damage to either the body or property of any person, the owner or keeper, or, if the owner or keeper is a minor, the parent or guardian of such minor, shall be liable for such damage, except when such damage has been occasioned to the body or property of a person who, at the time such damage was sustained, ***was committing a trespass or other tort***, or was teasing, tormenting or abusing such dog.

C.G.S. § 22-357 (emphasis added).

29

In the instant case, the plaintiff's claim is barred because any injuries suffered due to the police canine Dakota occurred during the commission of a tort. The plaintiff was resisting arrest. As such, he cannot prevail under §22-357.

Moreover, the plaintiff's claim must fail because the immunity afforded municipalities for governmental acts is paramount to the strict liability–based dog bite statute. Tryon v. North Branford, 58 Conn. App. 702, 721-24 (2000). In Tryon, the plaintiff attempted to impose strict liability on the defendant municipality pursuant to Conn. Gen. Stat. §22-357. See id. at 719. The trial court granted summary judgment in favor of the defendant on the ground that the claim was barred by governmental immunity. See id. at 720. The Appellate Court affirmed, acknowledging the well-established principle that a municipality is generally immune from liability for its tortuous acts at common law and found that Conn. Gen. Stat. §52-557n "fails to mention any exception to the rule of municipal immunity that would allow liability for injuries pursuant to §22-357." Id. at 721, 723.

### K.    The Plaintiff's Monell Claim Fails As A Matter Of Law (Count Six).

A municipality "can be sued directly under Section 1983 for monetary, declaratory or injunctive relief [only] where . . . the action that is alleged to be unconstitutional implements or executes a policy or statement, ordinance, regulation or decision officially adopted and promulgated by the body's officers." Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690 (19778). To prevail on a Section 1983 claim against a municipality, a plaintiff must plead and prove the following: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983) (citing Monell v. New York City Dept. of Social Services, supra, 436 U.S. at 692-94.) "Absent a showing of a chain of causation between an official policy or custom and the

plaintiff's injury, <u>Monell</u> prohibits a finding of liability against a municipality."  <u>Love v.</u>
<u>Town of Granby</u>, Civil No. 3:02 CV 1960 (EBB) (D. Connecticut) (Attached as **Exhibit**
**U**).  A "city may be held liable under Section 1983 when 'official policy [is] the moving
force of the constitutional violation."  <u>Dodd v. City of Norwich</u>, 827 F.2d 1, 5 (2d Cir.
1987).

> **1.     The plaintiff cannot prevail unless he established that he**
> **suffered a constitutional injury.**

If this Court finds that the defendant police officers did not deprive the plaintiff a
protected constitutional right, Count Six fails.  Indeed, the plaintiff cannot prevail on a
<u>Monell</u> claim unless he has established that he has suffered a constitutional injury.
<u>See</u> <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986) (per curiam).

> **2.     There is no evidence of any failure to train.**

Alternatively, In <u>City of Canton v. Harris</u>, 489 U.S. 378 (1989), the Supreme
Court concluded, "there are limited circumstances in which an allegation of a "failure to
train" can be the basis for liability under § 1983. <u>Id.</u> at 387.  Noting the substantial
disagreement among the Circuits, the Court held that "the inadequacy of training policy
may serve as the basis for § 1983 liability only where the failure to train amounts to
*deliberate indifference* to the rights of persons with whom the police come in contact."
(Emphasis added.)  <u>Id.</u> at 388.  Therefore, "<u>Monell's</u> rule that a city is not liable under §
1983 unless a municipal policy causes a constitutional deprivation will not be satisfied
by merely alleging that the existing training program for a class of employees, such as
police officers, represents a policy for which the city is responsible."  <u>Id.</u> at 389 and n.9
("Obviously, if one retreats far enough from a constitutional violation some municipal
"policy" can be identified behind almost any . . . harm inflicted by a municipal official.)
"[F]or liability to attach . . . the [plaintiff must] [identify a] deficiency in a city's training

program [and such] must be closely related to the ultimate injury. Thus . . . [plaintiff] must still prove that the deficiency in training actually caused the police officers' indifference . . . ." Id. at 391 (Courts are not to become involved "in an endless exercise of second-guessing municipal employee-training programs." Id. at 392.)

      In other words, "[t]o prove such deliberate indifference, the Plaintiff must show that the need for more or better supervision to protect against constitutional violations was obvious." Vann v. City of New York, 72 F.3d 1049. The Vann Court further stated that: "An obvious need may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." Id.

      In the instant case, the plaintiffs have not properly pled or identified a deficiency in the Town of East Hartford police department's training program. On this basis alone, the plaintiff's Monell claims fail. City of Canton v. Harris, supra, 489 U.S. at 391.

      Nor can the plaintiff prove that the defendant Town of East Hartford adopted a policy of inadequate training of its police officers so as to evidence a deliberate indifference to residents or visitors to the Town of East Hartford. The Town requires all officers to adhere to the training protocol established by state standards. All of the defendant officers completed training at the Connecticut Municipal Police Training Academy. (Sgt. Rioux Affidavit, ¶ 5, **Exhibit L**). While at the academy, the defendant Officers and Sergeant received training in, *inter alia*: criminal investigation, human relations, defensive tactics, use of force, search and siezure. (Sgt. Rioux Affidavit, ¶ 6, **Exhibit L**). The defendant Officers attended supplemental training courses as part of their re-certification requirement dealing with laws of arrest, stopping suspects, use of

force, search and seizures, and all officers were certified at the time of the incident subject of this case. (Sgt. Rioux Affidavit, ¶ 7, 8, 9, **Exhibit L**).

In addition, Officer Proulx was a certified canine handler at the time of the subject incident, having been so certified and re-certified by the Connecticut State Police Canine Academy in accordance with Town of East Hartford directives. (CSP Canine Trainer Sgt. Rodino Affidavit, ¶ 5, 6, 7, **Exhibit M**).  After the initial thirteen week training program at the Academy, Officer Proulx was required to, and did train monthly with the police canine Dakota, at the Connecticut State Police Canine Academy. (CSP Canine Trainer Sgt. Rodino Affidavit, ¶ 7, **Exhibit M**).  Officer Proulx further trained with Canine Dakota at the Connecticut State Police academy one week every year, in accordance with the Town of East Hartford directive, receiving instruction in canine handling, including tracking and use of force with a canine under CALEA guidelines. (CSP Canine Trainer Sgt. Rodino Affidavit, ¶ 7, 8, 9, **Exhibit M**).

There is no issue of fact in this case concerning the extensive and detailed training received by the defendant officers, and the training of Canine Dakota.

### 3.    There is no evidence of any failure to supervise by the Chief

With respect to plaintiff's claim of some failure to supervise, a supervisor may not be held liable under § 1983 merely because his subordinate committed a constitutional tort.  Blyden v. Mancusi, 186 F. 3d 252, 264 (2d Cir. 1999).  Nor can liability be imposed upon a supervisor simply because an official was "in a high position of authority …." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); accord, Black v. Coughlin, 76 F.3d 72 (2d Cir. 1996).

The Second Circuit has found supervisory liability only when a causal link exists concerning an alleged unconstitutional act by the supervisor and the plaintiff's claimed injury, as follows:

33

> "[p]ersonal involvement of a supervisory defendant may be shown by
> evidence that: (1) the defendant participated directly in the alleged
> constitutional violation, (2) the defendant, after being informed of the
> violation [of rights] through a report or appeal, failed to remedy the
> wrong, (3) the defendant created a policy or custom under which
> unconstitutional practices occurred, or allowed the continuance of such a
> policy or custom, (4) the defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts, or (5) the defendant
> exhibited deliberate indifference to the rights of inmates by failing to act
> on information indicating that unconstitutional acts were occurring."

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995); see, also, Wright v. Smith, 21 F.3d
496 (2d Cir. 1994); Williams v. Smith, 781 F.2d 319 (2d Cir. 1986).

"[T]he plaintiff must identify specific acts or omissions of the supervisor that
evidence deliberate indifference and persuade the court that there is a 'relationship
between the "identified deficiency" and the "ultimate injury."'" Brown v. Muhenberg
Township, 269 F.3d 205, 216 (3rd Cir. 2001); citing, Sample v. Diecks, 885 F.2d 1099,
1118 (3rdCir. 1989).

Count Six of the plaintiff's Complaint alleges that both the Town of East Hartford
and Chief mark Sirois, for many years, possessed specific information and knowledge
that Officer Proulx was a dangerous and violent individual, who was prone to use
excessive force. (Plaintiff' Complaint, count Six, § 57).  In an attempt to support of this
theory, the plaintiff knowingly and grossly misrepresents two incidents involving Officer
Proulx, whereby the Police Department and the United States Department of Justice
both investigated and found no constitutional violations. (Affidavit of Sergeant
Juergens, ¶ 5, 6, 7, 8, 9, 10, 11, **Exhibit N**).  The plaintiff alleges past dog bite
incidents that, by policy and procedure of the Town of East Hartford, are automatically
investigated by the Town. (Plaintiff' Complaint, count Six, § 57).  The plaintiff offers no
evidence that any one of Officer Proulx' previous canine engagements were illegal.

The plaintiff cites to a pending action (Brocuglio v. Proulx, et al), Docket No. 3:99CV1888 -SRU) in support of his theory of obvious unlawful use of force, but this case has yet to go to trial and is deemed by the defendants as nothing more than frivolous litigation. (Respectfully requesting judicial notice of a pending federal action). The plaintiff's haphazard and reckless allegations should be dismissed as pure folly.

In the instant case, the Chief of Police of the Town of East Hartford, based on the aforesaid standards and the specific allegations set forth within the plaintiff's Amended Complaint, may only be found liable for deliberate indifference to the rights of the plaintiff by his failure to act on information indicating unconstitutional acts by the defendant officers in using force to arrest the plaintiff, or for gross negligence in failing to supervise the defendant officers relating to this issue. Blyden, 186 F.3d at 264-5. Additionally, as set forth above, the plaintiff must also show an affirmative causal link between this alleged inaction and the plaintiff's injury.

The plaintiff only makes conclusory allegations of supervisory liability against Chief Sirois.  No facts have been alleged to establish that Chief Sirois was deliberately indifferent or grossly negligent for any supervisory function.  Indeed, Chief Sirois has only been the sworn-in Chief of the police department for only **one month before the subject incident**. (Affidavit of Sergeant Juergens, ¶ 13, **Exhibit N**).  Moreover, in the instant case, Sergeant Timothy Irwin investigated the incident by interviewing Officer Proulx and the plaintiff, Kevin Cutler. (Irwin Supplement Report, p. 1, **Exhibit J**) (Sgt. Irwin Affidavit, ¶ 4, 5, 6, 7, 8, **Exhibit K**).  Pursuant to the East Hartford Police Department canine policy, the injuries sustained by the plaintiff were photographed. (Irwin Supplement Report, p. 1, **Exhibit J**) (Sgt. Irwin Affidavit, ¶ 4, 5, 6, 7, 8, **Exhibit K**).  Lastly, the plaintiff has not pled any facts that provide a causal link between the alleged Constitutional violations and any action or omission by Chief Sirois, himself.

35

As a matter of law, no reasonable jury could find that Chief Sirois was deliberately indifferent in failing to instruct, control, discipline the defendant officers on a continuing basis during his tenure as chief, whereby an affirmative causal link can be shown between such alleged inaction and the plaintiff's claimed injury in this case. Summary judgment is proper, and the plaintiff's claims against the Chief of Police dismissed as a matter of law.

**c.    In the alternative, the Chief of Police is protected by qualified immunity.**

Since supervisory liability is a form of personal liability, it is subject to the defense of qualified immunity. See, Brown v. Muhlenberg Township, 269 F.3d 205 (3rd cir, 2001); M. Schwartz, Section 1983 Litigation: Claims and Defenses, supra note 1 at § 9.24, pp. 438-439.

Once again, the defense of qualified immunity is established when '(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law.'" Id., citing, Teirney v. Davidson, 133 F. 3d 189, 196 (2d Cir. 1998).

As set forth above, the defendants do not know of any clearly established law that would lead a jury to find that any action or inaction on the part of Chief Sirois would cause the defendant officers to allegedly violate the plaintiff's rights in using appropriate force to apprehend him.  The plaintiff fails to assert any specific act or omission on the part of Chief Sirois that could reasonably be considered contrary to law.  Additionally, there is absolutely no issue of fact that would lead a jury to find any failure by Chief Sirois to instruct, supervise, control and discipline the defendant officers on a continuing basis, which was objectively unreasonable, thus causing a violation of the plaintiff's constitutional rights.

Accordingly, Count Six should be dismissed.

## VII.  **CONCLUSION**:

Based on the foregoing, Officer William Proulx, Officer Jon Stosuy, Sergeant Lisa Freeman, Jon or Jane Doe, Chief Mark Sirois and The City of East Hartford, respectfully request that this Court grant their Motion for Summary Judgment.

> DEFENDANTS,
> WILLIAM PROULX, JON STOSUY,
> LISA FREEMAN, JANE/JOHN DOE,
> MARK J. SIROIS, CHIEF OF THE EAST
> HARTFORD POLICE DEPARTMENT,
> and THE TOWN OF EAST HARTFORD

> By___/s/ Daniel C. DeMerchant__
> Daniel C. DeMerchant
> Howd & Ludorf
> 65 Wethersfield Avenue
> Hartford, CT  06114
> (860) 249-1361
> ct19342

## CERTIFICATION

This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via First Class Mail to the following counsel of record this 15th day of December, 2004.

Daniel D. Dwyer, Esquire
Dwyer, Sheridan & Fitzgerald, LLC
100 Sycamore Street
P.O. Box 537
Glastonbury, CT  06033

David Jaffe, Esquire
Eisenberg, Anderson, Michalik
  & Lynch, LLP
136 West Main Street
P.O. Box 2950
New Britain, CT  06050-2950

_____/s/ Daniel C. DeMerchant_____