## Connecticut Trial Ct. Unpublished Decisions

ASELTON v. EAST HARTFORD, No. X07 CV01 007 91 87 S (Dec. 3, 2003)

JOHN ASELTON, ADMINISTRATOR v. TOWN OF EAST HARTFORD ET AL.

*2003 Ct. Sup. 13508*

No. X07 CV01 007 91 87 S

Superior Court

Judicial District of Tolland

Complex Litigation Docket at Tolland

December 3, 2003

### MEMORANDUM OF DECISION

SFERRAZZA, JUDGE.

The defendants James Shay, Patricia Learned, William Madore, and Deborah Rataic move for summary judgment as to all counts of the complaint filed by the plaintiff, John Aselton, administrator for the estate of Brian Aselton, which pertain to these defendants.

Summary judgment shall be granted if the pleadings and documentary proof submitted demonstrate that no genuine dispute as to material fact exists and that the movant is entitled to judgment as a matter of law. Practice Book § 17-49.

It is undisputed that, on January 23, 1999, John Shay was the East Hartford Chief of Police; that Patricia Learned and William Madore were dispatchers for the East Hartford Police Department; and that Deborah

Rataic was a dispatcher-trainee for that department. It is further undisputed that on January 23, 1999, Brian Aselton was a police officer employed by that department; that at about 9:20 p.m. on that date he was dispatched to the scene of a burglary in progress; that his arrival and presence disrupted the burglar; and that one of the burglars, Alex Sostre, shot and killed Officer Aselton while he was performing his duties as a police officer.

The plaintiff conceded that the exclusivity of our Workers' Compensation law bars liability against the movants for the claims of negligence and recklessness contained in the second, fourth, sixth, twelfth, thirteenth, seventeenth, and eighteenth counts and that these counts ought to be dismissed. The remaining counts against the defendants allege claims of wilful or malicious conduct, direct common-law liability under the Connecticut constitution, and liability under 42 U.S.C. § 1983.

I

CT Page 13509

Counts fourteen and nineteen assert claims under the wilful and malicious statutory exception to the exclusivity of Workers' Compensation as set forth in General Statutes § 31-293a. There is no genuine dispute that Learned, Rataic, and Madore handled the emergency call in question and dispatched Officer Aselton to the scene of what turned out to be a burglary. Learned, Rataic, and Madore have each submitted affidavits denying any intent to harm Officer Aselton as well as any actual knowledge that Officer Aselton would encounter an armed burglar who was ready, willing, and able to murder him.

The movant in a summary judgment motion has the burden of demonstrating an absence of genuine dispute as to material facts. *Mingachos v. CBS*, 196 Conn. 91, 111 (1985). Once the movant has offered proof as to a material fact, the opponent must offer countervailing evidence to show a factual controversy exists. *Suarez v. Dickmont Plastics Corp. I*, 229 Conn. 99, 105 (1994).

Intent, malice, and wilfulness can be proven by circumstantial evidence. *Nolan v. Borkowski,* 206 Conn. 495, 502 (1988); *Melanson v. West Hartford,* 61 Conn. App. 683, 692 (2001). "A wilful or malicious injury is one inflicted intentionally without just cause or excuse. *Id.* Although proof of ill will is unnecessary, it is insufficient merely to establish "that the act resulting in the injury was intentional in the sense that it was the voluntary action of the person involved." *Id.* For purposes of § 31-293a, not only the acts producing the injury must be intentional, but also "the resulting injury must be intended." *Id.* "A wilful or malicious injury is one caused by design." *Id.*

The documentary proof submitted is bereft of any evidence, direct or circumstantial, from which one might logically and reasonably infer that any of these three dispatchers acted with the *aim* that Officer Aselton would face deadly force at the hands of an armed burglar.

The plaintiff did submit documents giving rise to a factual question regarding whether Learned made insulting comments regarding Officer Aselton's abilities after hearing that he had been shot. While these appallingly disrespectful, after-the-fact comments, if uttered, may have plumbed the depths of thoughtlessness and insensitivity, they are no proof that Learned intended that Officer Aselton be shot when she handled the emergency call which resulted in his being dispatched to the scene of a disturbance.

Learned, Madore, and Rataic are entitled to judgment, as a matter of law, as to these counts.
CT Page 13510

II

Counts eleven, sixteen, and twenty-one allege common-law liability for purported violations of the Connecticut constitution against Shay, Learned, Rataic, and Madore, respectively.

The source of judicially created private causes of action seeking monetary damages for constitutional violations is the United States

Supreme Court case of *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971). In that case, the United States Supreme Court permitted a civil damages suit against federal officers for certain violations of the federal constitution for which no other remedy existed. Such actions based on constitutional infringements have come to be called *Bivens* actions.

In *Kelley Property Development, Inc. v. Lebanon,* 226 Conn. 314 (1993), the Connecticut Supreme Court rejected adoption of *Bivens* liability where the plaintiff contended that state substantive and procedural due process rights were derogated by local zoning officials. While our Supreme Court found no cognizable cause of action in that case, the Court employed the analysis and criteria set forth in *Bivens* in arriving at that conclusion. By using this approach, our Supreme Court implicitly suggested that, given appropriate facts, under *Bivens* such a cause of action might be viable.

Five years later, our Supreme Court found such a case, *Binette v. Sabo,* 244 Conn. 23 (1998). However, our Supreme Court has unfailingly stated that in deciding whether a *Bivens* action ought to be permitted for state constitutional violations, the *Bivens* case and its federal progeny would guide Connecticut courts. *Kelley Property Development, Inc. v. Lebanon, supra,* 338; *ATC Partnership v. Windham,* 251 Conn. 597, 613 (1999).

In 1994, the United States Supreme Court held that courts cannot create causes of action for monetary damages where the legislature has expressly forbidden them. *FDIC v. Meyer,* 510 U.S. 471, 475 (1994). Put another way, *Bivens* actions are viable only in the *absence* of legislative restriction of such suits. The Connecticut Supreme Court acknowledged that the *Bivens* decision itself was premised on the fact that Congress had not provided a remedy "nor had it prohibited an award of damages." *Binette v. Sabo, supra,* 36.

In the present case our legislature has prohibited an employee from suing a coworker for work-related injuries and abolished all suits other than an action authorized under the Workers' Compensation law itself,

CT Page 13511

§ 31-293a. A court would trespass upon the separation of powers by allowing employees to sue coemployees under *Bivens* where our legislature has forbidden such suits. *Kelley Property Development, Inc. v. Lebanon, supra,* 339. Allowing a *Bivens* action against a coworker for a work-related death would undermine the fundamental purposes of the workers' compensation system which is to provide the exclusive remedy for such fatalities. *Melanson v. West Hartford, supra,* 684.

Consequently, the movants are entitled to judgment, as a matter of law, as to these counts, also.

III

Counts ten, fifteen, and twenty assert claims under 42 U.S.C. § 1983 against the movants. Although, the complaint sought damages for deprivations, under color of law, of rights conferred by the First, Fourth, Sixth, and Fourteenth Amendments to the United States Constitution, the plaintiff has abandoned any claims of constitutional infringement except with respect to substantive due process under the Fourteenth Amendment.

Substantive due process is an oxymoronic and inherently dangerous jurisprudential concept. See Justice Scalia's concurrence in *Sacramento v. Lewis,* 523 U.S. 833 (1998). It is an oxymoron because the search for due process does not cease when it is determined that the procedure which resulted in the particular governmental action in question was duly administered, i.e. afforded adequate notice and a meaningful opportunity to be heard, but continues on to evaluate whether the substance of the governmental action is "excessive," "oppressive," "shocking" or "unjustified by legitimate objectives."

The substantive due process concept is a dangerous one because it invites courts and judges to usurp the legislative function and override executive decision making. It does so by allowing courts to drift away from textual analysis of statutory, regulatory, and constitutional provisions and into the realm of policy making which rightfully belongs to

the other branches of government.

It is unsurprising, then, that the United States Supreme Court has attempted to keep a tight rein on substantive due process. In *Sacramento v. Lewis, supra,* that Court held that no deprivation of substantive due process can be predicated on traditional tort standards of negligence, gross negligence, reckless indifference, or deliberate disregard for the safety of others during a police chase. *Id.,* 836 and 848. The United States Supreme Court reversed the Court of Appeals which had ruled that
CT Page 13512
deliberate indifference or recklessness during a police pursuit which caused a death could constitute an infringement of substantive due process so as to permit a civil suit under 42 U.S.C. § 1983. *Id.,* 838.

The majority opinion stated that only "the most egregious official conduct can be said to be `arbitrary in the constitutional sense.'" *Id.,* 846. "[W]e have made it clear that the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." *Id.,* 848.

The Court went on to observe that when evaluating the conduct of police personnel responding to an emergency "a much higher standard of fault than deliberate indifference has to be shown for officer liability." *Id.,* 852. In cases of police response to emergencies "liability should turn" on whether good faith or maliciousness motivated the actor. *Id.,* 853. As a result, the United States Supreme Court held that "high-speed chases with no intent to harm" create no violation of substantive due process "redressible" under 42 U.S.C. § 1983. *Id.,* 854.

This high barrier regarding the imposition of liability under 42 U.S.C. § 1983 for infringement of substantive due process was recently underscored by the United States Supreme Court in *Chavez v. Martinez* (2003). In that case, *supra,* the United States Supreme Court reiterated its discontent with § 1983 actions based on substantive due process claims. The Court stated, "[m]any times, . . ., we have expressed our reluctance to expand the doctrine of' substantive due

process . . . in large part `because guideposts for responsible decision making in this unchartered area are scarce and open-ended.'" *Id.* There, the Court held that there was no violation of substantive due process to interrogate, over a forty-five minute period, a suspect who had been shot by police several times, causing permanent blindness and paralysis from the waist down, between medical procedures being performed in an emergency room of a hospital and despite the expressed desire of the patient to be left alone. *Id.*

Because the plaintiff in that case was never ultimately charged criminally nor prosecuted, the only possible basis for a 42 U.S.C. § 1983 action against the police interrogator was an allegation of a denial of substantive due process *Id.* The majority of the Court concluded that the interrogation in the hospital emergency room was neither egregious nor conscience shocking. *Id.* Because the police officer who questioned the plaintiff had no intent to increase the plaintiff's pain or injury, but instead was motivated by the need to obtain information before the gravely injured plaintiff might succumb, no

CT Page 13513

deprivation of substantive due process occurred, and summary judgment for the police officer was appropriate. *Id.* Thus, in order to impose § 1983 liability, based on substantive due process infringement, upon police personnel responding to an emergency call, the plaintiff must prove that the defendants intended to injure Officer Aselton or that their conduct was so egregious as to shock the conscience.

As noted above there is no genuine factual dispute that the movants never harbored an intent that Officer Aselton be injured when he was dispatched to respond to the emergency call. Neither does unwittingly dispatching an officer to a place where he unexpectedly encounters an armed burglar, willing to kill him, shock the conscience. Negligence, recklessness, and even callous indifference by police personnel who dispatched Officer Aselton that night are insufficient to create a substantive due process violation which can form the basis of liability. *Sacramento v. Lewis, supra,* 848.

The motion for summary judgment is granted as to all counts pertaining

to the movants.

SFERRAZZA, JUDGE.

CT Page 13514

Copyright © 2004 Loislaw.com, Inc. All Rights Reserved