## Loislaw Federal District Court Opinions

LOVE v. TOWN OF GRANBY, (Conn. 2004)

SEAN A. LOVE v. TOWN OF GRANBY, ET AL.

Civ. No. 3:02CV1960 (EBB).

United States District Court, D. Connecticut.

July 12, 2004

### RECOMMENDED RULING ON SUMMARY JUDGMENT

HOLLY FITZSIMMONS, Magistrate Judge

Plaintiff Sean Love brings this civil rights action under § 1983 against the Town of Granby and Granby Police Officers Douglas Clark and Robert Castle, who arrested him. He alleges false arrest, false imprisonment, sexual assault, and battery in violation of his Fourth and Fourteenth Amendment rights under the United States Constitution.[fn1] Specifically, plaintiff contends that, as a result of the defendant officers' actions and remarks, repressed childhood memories of sexual assaults at the hand of his natural father flashed back and caused him serious psychological injuries.

Defendants move for summary judgment, contending that, based on the undisputed facts, they are entitled to judgment as a matter of law. For the reasons that follow, defendants' Motion for Summary Judgment [Doc. #46] is **GRANTED** in part and **DENIED** in part.

Page 2

## STANDARD OF LAW

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. See D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, (1986). The non-moving party may not rely on conclusory allegations or unsubstantiated speculation. See D'Amico, 132 F.3d at 149. Instead, the non-moving party must produce specific, particularized facts indicating that a genuine factual issue exists. See Wright v. Coughlin, 132 F.3d 133, 137 (2d Cir. 1998). To defeat summary judgment, "there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252. If the evidence produced by the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. See id. at 249-50.

Pursuant to D. Conn. L. Civ. R. 56(a)(3),

Each statement of material fact in a Local Rule 56(a)1 Statement by a movant or by an opponent in a Local Rule 56(a)2 Statement, and each denial in an opponent's Local Rule 56(a)2 Statement, must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial. The affidavits, deposition testimony, responses to discovery requests, or other

**Page 3**

documents containing such evidence shall be filed and served with the Local Rule 56(a)1 and 2 Statements in conformity with Fed.R.Civ.P. 56(e). Counsel and pro se parties are hereby notified that failure to provide specific citations to evidence in the record as required by this Local Rule may result in

sanctions, including, when the movant fails to comply, an order denying the motion for summary judgment, and, when the opponent fails to comply, an order granting the motion.

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must present "significant probative evidence to create a genuine issue of material fact." Soto v. Meachum, Civ. No. B-90-270 (WWE), 1991 WL 218481, at *6 (D. Conn. Aug. 28, 1991). A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987).

A party may not create a genuine issue of material fact by presenting contradictory or unsupported statements. See Securities & Exchange Comm'n v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir. 1978). Nor may he rest on the "mere allegations or denials" contained in his pleadings. Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). See also Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (holding that party may not rely

Page 4

on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible). A self-serving affidavit which reiterates the conclusory allegations of the complaint in affidavit form is insufficient to preclude summary judgment. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990).

FACTS

Based on defendants' Local 56(a)(1) Statement and exhibits and plaintiff's Local 56(a)2 Statement and exhibits, the following facts are undisputed.

On November 11, 2000, at approximately 21:29 hours, plaintiff Sean Love, who was nineteen (19) years old, was operating a motor vehicle eastbound on East Granby Road in Granby, Connecticut. [Def. 56(a)(1) Stat., Doc. #48 at ¶ 1]. Granby Police Officer Douglas Clark was on duty, monitoring traffic at the intersection of East Granby Road and Park Place. Id. at 2. Plaintiff passed Officer Clark, and Officer Clark observed that plaintiff's motor vehicle had inoperable tail lamps. Id. at 3. As a result, Officer Clark effected a motor vehicle stop. Id. at 4. While the stop was occurring, Officer Clark observed furtive movements of the occupants in the motor vehicle. Officer Clark also noticed both rear passengers bend forward as if to reach for or conceal an item underneath the front seat. Id. at 5.

Page 5

After stopping the motor vehicle, Officer Clark approached to speak with plaintiff. Id. at 6. While Officer Clark was talking with plaintiff, Officer Castle arrived at the scene. Id. at 7. Officer Castle got out of his patrol car and stood approximately fifteen (15) feet away from plaintiff's motor vehicle. Id. at 8.

While Officer Clark was talking with plaintiff, he observed that plaintiff appeared extremely nervous. Id. at 9. Plaintiff apologized to Officer Clark repeatedly and stated that a fuse must have blown. Id. at 10. Officer Clark used a flashlight to look in the motor vehicle, where he noticed several bottles of alcoholic beverages. Id. at 11. The bottles were still cold, and Officer Clark could see condensation on the bottles, which were hidden underneath the seat. Id. at 12. Officer Clark asked plaintiff to step outside the vehicle and performed a pat down.[fn2] Officer Clark detected alcohol on plaintiff's breath and smelled marijuana on plaintiff. Id. at 14. Plaintiff told Officer Clark that he had used marijuana about one (1) to two (2) hours earlier. Id. at 15. Officer Clark performed a field sobriety test on plaintiff and noticed that

Page 6

plaintiff's eyes lacked smooth pursuit.[fn3] Id. at 16.

Plaintiff was subsequently handcuffed and charged with Possession of Alcohol by a Minor, Conn. Gen. Stat. § 30-89b; and Failure to Have Tail Lamps, Conn. Gen. Stat. § 14-96c. Id. at 18. He was also given a written warning for Failure to Have Tail Lamp, Conn. Gen. Stat. § 14-98c; and Possession of Alcohol by a Minor in a Motor Vehicle, Conn. Gen. Stat. § 14-111a. Id. at 19. Plaintiff was transported to Granby Police Department by Officer Clark, fingerprinted and processed. Id. at 20. He was released later that night on a five hundred dollar non-surety bond. Id. at 21. Plaintiff performed twenty (20) hours of community service in exchange for a nolle. Id. at 22.

Disputed Issues of Material Fact

Plaintiff asserts in his Local 56(a)2 Statement that the following issues of material fact are in dispute.

Plaintiff attests that when he was patted down by Officer Clark, Officer Clark frisked him and "when his hands got to my groin area, he grabbed my scrotum and said, 'You haven't felt like this in a long time, you faggot.'" Pl. Ex. A ¶ 11. He avers that Officer Clark used profanity and called him a faggot. Id. at ¶ 12-13. He

Page 7

stated that Officer Castle, the ranking officer, was present and did not intervene. Id. at 13. Plaintiff also claims that he submitted to a breathalyzer test at the police station and it came back negative. Id. at 19. Plaintiff avers that Officers Clark and Castle threatened to put a wig on him and place him in a cell with "a big, black, guy in a rear cell named Bubba." Id. at 22-24. "Castle opened the desk drawer and said he was looking for a wig to put on me because 'Bubba' liked it when you wore a wig." Id. at 23. Plaintiff contends he was subjected to intimidation at the police station by the defendant officers. Id. at 21-24.

Ky Schieb, a passenger in the car during the stop, was transported to the police station with plaintiff and was placed in the lockup with plaintiff. His statement corroborates plaintiff's testimony. [Pl. Ex. F at 3-10]. Jamie Leifert, another passenger in the car, corroborates plaintiff's testimony regarding the stop and frisk by Officer Clark. [Pl. Ex. C at 50-52].

DISCUSSION

1. Claims Against Officers Clark and Castle

A. Fourth Amendment: False Arrest and False Imprisonment

"A Section 1983 claim for false arrest [or false imprisonment] rest[s] on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause."
Page 8
Sulkowska v. City of N.Y., 129 F. Supp.2d 274, 287 (S.D.N.Y. 2001) (internal quotation marks omitted).

There is no dispute that, on November 11, 2000, the then-19 year old plaintiff was driving with an inoperable tail lamp. There is no dispute that there were open alcoholic beverages in the car. Plaintiff does not challenge the propriety of the stop on the basis of the faulty tail lamps and he does not challenge his arrest for possession of alcohol by a minor, Conn. Gen. Stat. § 30-89(b), or for the infraction of failure to have tail lamps. Conn. Gen. Stat. § 14-96c. Finally, there is no dispute that plaintiff performed twenty hours of community service in exchange for a nolle.

In Connecticut, the tort of false arrest is synonymous with that of false imprisonment. Outlaw v. City of Meriden, 43 Conn. App. 387, 392 (1996). "False imprisonment, or false arrest, is

the unlawful restraint by one person of the physical liberty of another." Id. (quoting Green v. Donroe, 186 Conn. 265, 267 (1982)). Because plaintiff does not challenge the validity of the stop and arrest, defendants correctly argue that plaintiff cannot maintain a cause of action for false arrest and false imprisonment.

It is well settled in the Second Circuit that in order to prevail on a cause of action for false arrest or malicious prosecution, a plaintiff must prove that the underlying criminal proceeding terminated in his favor. Roesch v. Otarola, 980 F.2d 850, 852 (2d Cir. 1992). A criminal proceeding terminates in favor of the plaintiff only when its "final

Page 9

disposition is such as to indicate the accused is not guilty." Singleton v. City of New York, 632 F.2d 185, 193 (2d Cir. 1980). A nolle, like "[a]n adjournment in contemplation of dismissal, . . . involves the consent of both the prosecution and the accused and leaves open the question of the accused's guilt."

Birdsall v. City of Hartford, 249 F. Supp.2d 163, 171 (D. Conn. 2003). Because plaintiff has failed to show that the underlying criminal proceeding terminated in his favor, he is barred from bringing a Section 1983 false arrest or false imprisonment claim Id. Plaintiff offered no opposing argument or case law. Accordingly, summary judgment shall enter in favor of defendants on the federal false arrest and false imprisonment claims.

B. <u>Fourth Amendment Prohibition Against Unreasonable Search and Seizure: Sexual Assault and Battery</u>

Defendants first argue that plaintiff's claims of sexual

assault and battery are state law claims and that this Court should decline to exercise pendent jurisdiction. [Doc. #47 at 18-20]. Plaintiff asserts that the sexual assault and battery claims are not pendent state law claims. He argues that a Fourth Amendment violation occurred during the pat down by Officer Clark and the subsequent threats and intimidation by both Officers Clark and Castle at the Granby police station. [Doc. #50 at 5-6]. Plaintiff maintains that the officers' actions during his arrest and confinement form the

Page 10

factual basis for a Fourth Amendment claim for unreasonable search and seizure. Id.

Defendants argue in their reply brief that "claims of sexual assault by a police officer do not fall under the Fourth Amendment," and should be brought under the Fourteenth Amendment. [Doc. #54]. However, none of the cases relied on by defendants involved an arrest or other custodial situation. The Fourth Amendment is not the proper source of a plaintiff's constitutional right when the objectionable conduct occurs outside of a criminal investigation or other form of governmental investigation or activity. Poe v. Leonard, 282 F.3d 123, 136 (2d Cir. 2002); see Fontana v. Haskin, 262 F.3d 871, 882 ("Sexual misconduct by a police officer toward another generally is analyzed under the Fourteenth Amendment; sexual conduct by a police officer of a criminal suspect during a continuing seizure is analyzed under the Fourth Amendment); Jones v. Wellham, 104 F.3d 620, 628 (4th Cir. 1997) ("Because the harm inflicted did not occur in the course of an attempted arrest or apprehension of one suspected of criminal conduct, the claim was not one of a Fourth Amendment violation, but of the violation of the substantive due process right under the Fourteenth Amendment not to be subjected by anyone acting under color of state law to the wanton infliction of physical harm."); Doe v. City of Hartford, Civ. A. 3:03CV1454(JCH), 2004 WL 1091745, *1 (D. Conn. May 13, 2004) (plaintiff was not under arrest when she was

Page 11

sexually assaulted by a police officer).

Here, Love's claims are properly analyzed under the Fourth Amendment. "Beyond the specific proscription of excessive force, the Fourth Amendment generally proscribes unreasonable intrusions on one's bodily integrity, and other harassing and abusive behavior that rises to the level of unreasonable seizure." Fontana, 262 F.3d at 878-79 (internal quotation marks and citations omitted). Further, "once a seizure has occurred, it continues throughout the time the arrestee is in the custody of the arresting officers." Id. at 879-80.

In Tennessee v. Garner the Supreme Court held that Fourth Amendment reasonableness "depends not only on when a seizure is made, but also how it is carried out." 471 U.S. 1, 8 (1985). Assessing the Constitutionality of police action during a seizure involves "a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Graham v. Connor, 490 U.S. 386, 396 (1989) (quoting Garner, 471 U.S. at 8). In traditional excessive force cases, we consider the severity of the crime at issue, the threat that the suspect poses to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting flight. Id. Although the excessive force test is a useful analog, it is not directly applicable to assess the type of behavior alleged in this case, because there can be no "countervailing governmental interest" to justify sexual misconduct. "[W]here there is no need for force, any force used is constitutionally unreasonable." Headwaters Forest, 240 F.3d at 1199 (emphasis in original).

Page 12

Id. at 880.

Plaintiff asserts that, when he was patted down by Officer Clark, "his hands got to my groin area, he grabbed my scrotum and said, `You haven't felt like this in a long time, you faggot.'" Pl. Ex. A ¶ 11. He states that Officer Clark used profanity and called him a faggot, id. at ¶ 12-13, and that Officer Castle, the ranking officer, was present and did not intervene. Id. at ¶ 13. "Of course, not every truthful allegation of sexual bodily intrusion during an arrest is actionable as a violation of the Fourth Amendment. Some bodily intrusions may be provably accidental or de minimis and thus constitutionally reasonable." Fontana, 262 F.3d at 880. Plaintiff also asserts that Officers Clark and Castle threatened to put a wig on him and place him in a cell with "a big, black, guy in a rear cell named Bubba." Pl. Ex. A at ¶ 22-24. "Castle opened the desk drawer and said he was looking for a wig to put on me because `Bubba' liked it when you wore a wig." Id. at ¶ 23. Plaintiff contends those comments and associated actions subjected him to intimidation at the police station. Id. at 21-24. His testimony is corroborated by two witnesses in deposition testimony and in a sworn statement. See Pl. Ex. C & F. If a jury finds that the physical touching and the comments occurred as described, these acts could support a finding of a Fourth Amendment violation. Fontana, 262 F.3d at 880-81.

The Court finds that plaintiff has identified at least one
Page 13
genuine issue of material fact that precludes summary judgment on the Fourth Amendment claim. Accordingly, summary judgment is denied.

2. Claims Against the Town of Granby

Plaintiff has alleged that the Town of Granby has municipal liability for injuries arising from the defendant officers'

actions. He contends that, despite the Town's awareness of prior impermissible conduct by defendants, it continued to employ the officers and this constituted gross negligence in its supervision of the defendant police officers. [Amend. Compl. ¶¶ 21-25]. Plaintiff asserts that the Town's inaction constituted a violation of his civil rights. Id. ¶ 25.

Under Monell v. New York City Dep't of Soc. Serv., 436 U.S. 658 (1978), a municipality "may not be held liable under § 1983 simply for the isolated unconstitutional acts of its employees. In order to impose § 1983 liability upon a municipality, a plaintiff must demonstrate that any constitutional harm suffered was the result of a municipal policy or custom." Sorlucco v. New York City Police Dep't, 971 F.2d 864, 870 (2d Cir. 1992) (internal citations omitted).

To prevail on a Section 1983 claim against a municipality, a plaintiff must plead and prove the following: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Batista v. Rodriguez,

Page 14

702 F.2d 393, 397 (2d Cir. 1983) (citing Monell). Absent a showing of a chain of causation between an official policy or custom and the plaintiff's injury, Monell prohibits a finding of liability against a municipality. See id.

Plaintiff's lack of supervision claim against the town is based on a copy of a memorandum entitled "citizen complaint," dated February 16, 2000, written by then-Captain David Watkins, memorializing his contact with one Clinton Perry regarding a motor vehicle stop conducted by Officer Clark. [Pl. Ex. E]. Captain Watkins stated that the complainant was "upset over what he perceived as [Officer] Clark's threatening demeanor during the contact." [Pl. Ex. E at 1 (emphasis added)]. "This specifically dealt with a comment regarding the wearing of seat belts and `I'll be looking for you.'" Id. The memorandum

states, "[Officer] Clark was advised that this was the <u>third</u> instance wherein a person had contacted the department in regards to [Officer] Clark's demeanor during a traffic stop." <u>Id.</u> (emphasis added). The Captain directed Officer Clark "to follow the instructions on the cover of the Infraction Complaint and Misdemeanor Summons books on how to initiate contact with a motorist and to avoid ancillary conversation." <u>Id.</u> Other evidence provided in opposition to summary judgment included the Town's responses to interrogatories in which David L. Watkins, now the Granby Police Chief, stated that, from February 16 through December 27, 2000, Officer Clark was the

Page 15

subject of <u>five</u> citizen complaints, was disciplined for one of them and talked to regarding another complaint, both instances occurring before Love was stopped on November 11, 2000. [Pl. Ex. D ¶ 22-25]. Plaintiff contends a total of eight citizen complaints against Officer Clark were known to the Town in 2000, five made before the events of November 11.

   Nevertheless, summary judgment must be granted on the failure to supervise claim against the Town. To avoid summary judgment plaintiff must provide evidence from which a reasonable juror could conclude that "municipal inaction such as the persistent failure to discipline subordinates who violated civil rights could give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct within the meaning of <u>Monell</u>." <u>Batista v. Rodriguez</u>, <u>702 F.2d 393</u>, 397 (2d Cir. 1983). Plaintiff has not provided any evidence that any prior citizen complaint against Officer Clark rose to the level of a constitutional violation. Evidence of eight citizen complaints against Officer Clark, one involving a motor vehicle stop for failure to wear a safety belt, is insufficient to establish a policy of inadequate discipline. <u>See</u> <u>Turpin v. Mailet,</u> <u>619 F.2d 196</u>, 202 (2d Cir.), <u>cert. denied,</u> 449 U.S. 1016 (1980). For each complaint but one, the record consists of the name of complainant and date of the incident, with little or no

Page 16

explanation.[fn4] From this list, a reasonable juror could not conclude that the Town had a history of ratifying unconstitutional conduct by Officer Clark, or that Officer Clark had previously engaged in unconstitutional conduct while stopping motorists, let alone the type of conduct alleged in this case. Plaintiff's failure to supervise claim against the Town must therefore be dismissed.

CONCLUSION

For the reasons stated, defendants' Motion for Summary Judgment [Doc. #46] is **GRANTED** in part and **DENIED** in part. Summary Judgment is **GRANTED** on plaintiff's claims of false arrest and false imprisonment against defendants Clark and Castle and the Monell claim against the Town of Granby.

Any objections to this recommended ruling must be filed with the Clerk of the Court within ten (10) days of the receipt of this order. Failure to object within ten (10) days may preclude appellate review. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure; Rule 2 of the Local Rules for

Page 17

United States Magistrates; Small v. Secretary of H.H.S., 892 F.2d 15 (2d Cir. 1989) (per curiam); F.D.I.C. v. Hillcrest Assoc., 66 F.3d 566, 569 (2d Cir. 1995).

[fn1] Plaintiff contends that the sexual assault and battery claim is a violation of the Fourth and Fourteenth Amendments, not pendent state law claims as defendants assert.

[fn2] The parties dispute what happened during the pat down. Defendants contend "Officer Clark performed a Terry pat down" of plaintiff. [Def. 56(a)1 Stat. ¶ 13]. Plaintiff attests that "Officer Clark then frisked me and when his hands got to my groin area, he grabbed my scrotum and said, "You haven't been felt like this in a long time, you faggot." [Pl. Ex. A ¶ 11; Pl. Ex. F

Schieb Stat. at 4]. He further attests that Officer Castle was present and did not intervene. [Pl. Ex. A ¶ 13; Pl. Ex. Schieb Stat. at 3-4]. Ky Schieb, a passenger in the car, corroborates plaintiff's testimony.

[fn3] Defendants assert that a Horizontal Gaze Nystagmus test was performed on plaintiff. Plaintiff admits the statement of fact but calls the test "a field sobriety test." [Doc. #51 at 16]. This dispute is not material to the issue before the Court on summary judgment.

[fn4] The following information was provided by Chief Watkins regarding the five citizen complaints against Officer Clark: On February 16, 2000, "[c]omments to the public;" July 28, 2000, "[o]peration of police vehicle;" September 17, 2000, "[h]arassment on `way he looked;'" December 19, 2000, "[f]ear of future motor vehicle stops as a `marked man,'" and December 27, 2000, "[l]ack of probable cause in making motor vehicle stops." [Pl. Ex. D]. No further information was provided.

Copyright © 2004 Loislaw.com, Inc. All Rights Reserved