UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KEVIN S. CUTLER | : | NO.: 3:02CV1939 (SRU) |
| | : | |
| v. | : | |
| | : | |
| WILLIAM PROULX, JON STOSUY, | : | |
| ET AL | : | DECEMBER 15, 2004 |

**LOCAL RULE 56(a)1 STATEMENT IN SUPPORT OF DEFENDANTS'**
**MOTIONS FOR SUMMARY JUDGMENT**

Pursuant to Rule 56(a)1 of the Local Rules of Civil Procedure, the defendants, **Officer William Proulx, Officer Jon Stosuy, Sergeant Lisa Freeman, John or Jane Doe, Chief Mark Sirois** and **The Town of East Hartford**, respectfully submit the following statement of uncontested material facts in support of their Motions for Summary Judgment.

1. The defendants Officer William Proulx, Officer Jon Stosuy, Sergeant Lisa Freeman were employed in the capacity of police officers with the Town of East Hartford at the time of the incident alleged in the Complaint. (Complaint, ¶ 6).

2. Defendant, Mark Sirois, was the Chief of Police for the Town of East Hartford at the time of the incident. (Complaint, ¶ 7).

3. The defendant, Town of East Hartford, is a municipal corporation created and existing as a political subdivision of the State of Connecticut pursuant to the laws of the State of Connecticut. (Complaint, ¶ 8).

4. On November 6, 2001 at approximately 9:45 a.m, police officer John

Stosuy was monitoring traffic speed on Route 5 approximately ½ mile south of the South Windsor/East Hartford border. (Police Report, p. 1, **Exhibit A**) (Officer Stosuy Affidavit, ¶ 5, **Exhibit B**).

     5.     With a laser unit, Officer Stosuy recorded the plaintiff's vehicle traveling 86 mph in a posted 45 mph zone while heading south on Route 5.  (Police Report, p. 1, **Exhibit A**) (Officer Stosuy Affidavit,  ¶ 6, **Exhibit B**).

     6.     Officer Stosuy also observed the plaintiff's vehicle changing lanes erratically and passing other vehicles.  (Police Report, p. 1., **Exhibit A**) (Officer Stosuy Affidavit, ¶ 7, **Exhibit B**).

     7.     In response to this situation, Officer Stosuy, who was operating a fully marked police cruiser, activated his lights and siren, and attempted to stop the plaintiff's vehicle.  (Police Report, pp. 1-2., **Exhibit A**) (Officer Stosuy Affidavit, ¶ 8, **Exhibit B**).

     8.     The plaintiff accelerated his vehicle in an attempt to evade Officer Stosuy. (Police Report, pp. 1-2., **Exhibit A**) (Officer Stosuy Affidavit, ¶ 9, **Exhibit B**).

     9.     As the plaintiff's vehicle approached an intersection where other vehicles were stopped for a red light, the plaintiff slowed down, went around several stopped vehicles, took a left through an opening in the median, completed a u-turn, and accelerated northbound at a high rate of speed.  (Police Report, pp. 1-2., **Exhibit A**) (Officer Stosuy Affidavit, ¶ 10,  **Exhibit B**).

     10.     Officer Stosuy continued his pursuit of the plaintiff's vehicle.  (Police Report, p. 2., **Exhibit A**).

     11.     Within a short time, both the plaintiff and Officer Stosuy approached a group of vehicles that had stopped for a red light and occupied both northbound lanes. (Officer Stosuy Affidavit,  ¶ 12, **Exhibit B**).

12. The plaintiff slowed his vehicle and, according to Officer Stosuy, appeared to be looking for a way to get around them. (Police Report, p. 2., **Exhibit A**) (Officer Stosuy Affidavit, ¶ 13, **Exhibit B**).

13. Officer Stosuy pulled alongside the left rear of the plaintiff's vehicle, and the plaintiff pulled to the right side of the road and stopped. (Police Report, p. 2., **Exhibit A**) (Officer Stosuy Affidavit, ¶ 14, **Exhibit B**).

14. As Officer Stosuy approached the plaintiff's vehicle, he immediately ordered the plaintiff to turn off the engine and to keep his hands in plain view. (Police Report, p. 2., **Exhibit A**) (Officer Stosuy Affidavit, ¶ 15, **Exhibit B**).

15. The plaintiff shut off his car, exited, and began walking toward Officer Stosuy, who was positioned in front of his police vehicle. (Police Report, p. 2., **Exhibit A**) (Officer Stosuy Affidavit, ¶ 16, **Exhibit B**).

16. Officer Stosuy ordered the plaintiff to place his hands on the trunk of the car, but the plaintiff refused and became argumentative and uncooperative. (Police Report, p. 3, **Exhibit A**) (Officer Stosuy Affidavit, ¶ 17, **Exhibit B**).

17. Officer Stosuy attempted to forcibly place the plaintiff against his vehicle; the plaintiff pushed off the vehicle and attempted to resist Officer Stosuy's grasp. (Police Report, p. 3, **Exhibit A**) (Officer Stosuy Affidavit, ¶ 18 **Exhibit B**).

18. Officer Stosuy could not complete a search of the plaintiff for weapons due to the due to Mr. Cutler's conduct in pushing off the car and attempting to spin around. (Officer Stosuy Affidavit, ¶ 19, **Exhibit B**).

19. Officer Proulx was on routine patrol when he heard Officer Stosuy's call for backup during the pursuit of the plaintiff. (Proulx Supplement Report, p. 1., **Exhibit C**) (Officer Proulx Affidavit, ¶ 8, **Exhibit D**).

20. When Officer Proulx arrived at the scene, he observed Officer Stosuy and the plaintiff struggling by the side of the vehicle, which was in the roadway and adjacent to roadway traffic. (Proulx Supplement Report, p. 1., **Exhibit C**) (Officer Proulx Affidavit, ¶ 9, **Exhibit D**).

21. The roadway traffic on Route 5 at the incident scene was moderate to heavy, with vehicles passing at speeds over 30-45 miles per hour near Officer Stosuy and the plaintiff. (Officer Stosuy Affidavit, ¶ 20, **Exhibit B**) (Officer Proulx Affidavit, ¶ 10, **Exhibit D**).

22. In consideration of the danger caused to nearby traffic and the plaintiff's continued struggle, Officer Proulx immediately approached the area and instructed the plaintiff to stop resisting or he would release a trained police canine. (Proulx Supplement Report, p. 1., **Exhibit C**) (Officer Proulx Affidavit, ¶ 11, **Exhibit D**).

23. The plaintiff continued to resist Officer Stosuy, and Officer Proulx gave his police canine, Dakota, a command to engage the plaintiff. (Proulx Supplement Report, p. 1., **Exhibit C**) (Officer Proulx Affidavit, ¶ 12, **Exhibit D**).

24. Dakota complied and engaged the plaintiff on the thigh. (Police Report, p. 3, **Exhibit A**) (Proulx Supplement Report, p. 1., **Exhibit C**).

25. The plaintiff fell to the ground and began jabbing at Dakota's face and eyes, causing the dog to lose its grip and re-engage the plaintiff. (Proulx Supplement Report, p. 1., **Exhibit C**) (Officer Proulx Affidavit, ¶ 14, **Exhibit D**).

26. After approximately one minute, the plaintiff ended his resistance and Dakota was ordered to release the plaintiff's leg and return to Officer Proulx's police cruiser. (Officer Proulx Affidavit, ¶ 15, 16, **Exhibit D**).

27. Officer Stosuy handcuffed the plaintiff while the plaintiff was on the

4

ground. (Officer Stosuy Affidavit, ¶ 26, **Exhibit B**).

28. Sgt. Lisa Freeman arrived on the scene after the plaintiff had already been arrested, handcuffed and seated off the road and under a tree. (Officer Stosuy Affidavit, ¶ 27, **Exhibit B**) (Officer Proulx Affidavit, ¶ 17, **Exhibit D**) (Sgt. Freeman Affidavit, ¶ 8, **Exhibit E**).

29. Sgt. Freeman did not witness the canine bite the plaintiff, or the manner in which Cutler was handcuffed. (Sgt. Freeman Affidavit, ¶ 9, **Exhibit E**).

30. Sgt Freeman observed that the plaintiff did not appear to be in any type of pain, but was obnoxious toward the officers, name calling such as "screw you guys." (Sgt. Freeman Affidavit, ¶ 12, **Exhibit E**).

31. In the rear passenger seat of the plaintiff's vehicle, in plain view, was several computer components, including computer keyboards. (Police Report, p. 4, **Exhibit A**) (Freeman Supplement Report, **Exhibit F**) (Officer Stosuy Affidavit, ¶ 28, **Exhibit B**).

32. A search of the backseat passenger compartment of Cutler's vehicle revealed that the keyboards had serial numbers obscured by black magic marker. (Police Report, p. 4, **Exhibit A**) (Freeman Supplement Report, **Exhibit F**) (Officer Stosuy Affidavit, ¶ 29, **Exhibit B**).

33. Sgt. Freeman had been investigating a string of commercial burglaries in the area involving computer and related equipment. (Sgt. Freeman Affidavit, ¶ 15, **Exhibit E**) (Freeman Supplement Report, **Exhibit F**).

34. Based on years of police training and experience, Sergeant Freeman knew and understood, as well as any other reasonable officer would, that obscuring or altering serial numbers on equipment is a criminal offense, and that the obscuring or

altering of serial numbers is likely undertaken to conceal the identity of stolen equipment. (Sgt. Freeman Affidavit, ¶ 16, 17, **Exhibit E**).

35.  After observing the computer equipment and the obscured serial numbers, the officers searched the trunk of the plaintiff's vehicle in search of more stolen computer equipment or other contraband. (Officer Stosuy Affidavit, ¶ 30, **Exhibit B**) (Sgt. Freeman Affidavit, ¶ 18, **Exhibit E**).

36.  While searching the trunk of the vehicle, the officers discovered a .223 caliber semiautomatic rifle with two fully loaded magazines holding 50 rounds of ammunition. (Police Report, p. 4, **Exhibit A**) (Officer Stosuy Affidavit, ¶ 31, **Exhibit B**).

37.  The plaintiff was transported to police headquarters for booking. (Police Report, p. 4, **Exhibit A**) (Proulx Supplement Report, p. 2., **Exhibit C**).

38.  Ambulance personnel arrived to give the plaintiff medical attention while at the police headquarters. (Police Report, p. 4, **Exhibit A**) (Proulx Supplement Report, p. 2., **Exhibit C**).

39.  In conformance with policy and procedure, photographs were taken of the plaintiff and his dog bites. (Canine Policy, **Exhibit G**) (Photos, **Exhibit H**).

40.  The plaintiff was then transported to Manchester Memorial Hospital for continued treatment of the dog bites. (Police Report, p. 4, **Exhibit A**) (Proulx Supplement Report, p. 2., **Exhibit C**).

41.  The plaintiff was arrested for interfering with a police officer, reckless endangerment in the second degree, altering manufacturer's serial numbers, traveling at an unreasonable speed, reckless driving, and engaging police in pursuit. (Police Report, p. 4., **Exhibit A**).

42.  After bargaining with the prosecutor, the plaintiff pled guilty to the charge

of traveling at an unreasonable speed in violation of Conn. Gen. Stat. §14-218a, and paid an $80 fine. (Criminal hearing transcript, pp. 1, 5., **Exhibit I**).

43. The Court dismissed all other charges. (Criminal hearing transcript, p. 5., **Exhibit I**).

44. Officers Stosuy and Proulx became police officers with the Town of East Hartford in 1981 and 1983, respectively. (Officer Stosuy Affidavit, ¶ 33, **Exhibit B**) (Officer Proulx Affidavit, ¶ 18, **Exhibit D**).

45. Sgt. Freeman was hired as a police officer with the Town on January 18, 1994. (Sgt. Freeman Affidavit, ¶ 22, **Exhibit E**).

46. Officer Proulx's conduct surrounding the plaintiff's arrest was investigated by Sgt. Timothy Irwin. (Irwin Supplement Report, p. 1, **Exhibit J**) (Sgt. Irwin Affidavit, ¶ 4, 5, 6, 7, **Exhibit K**) (Officer Proulx Affidavit, ¶ 19, **Exhibit D**).

47. After interviewing the plaintiff and Officer Proulx, in addition to reviewing Officer Proulx' Report, Sgt. Irwin determined that Officer Proulx's use of the canine was consistent with East Hartford Police Department policies and procedures. (Irwin Supplement Report, p. 1, **Exhibit J**) (Sgt. Irwin Affidavit, ¶ 4, 5, 6, 7, 8, **Exhibit K**) (Officer Proulx Affidavit, ¶ 22, **Exhibit D**).

48. The Town requires all officers to adhere to the training protocol established by state standards. All of the defendant officers completed training at the Connecticut Municipal Police Training Academy. (Sgt. Rioux Affidavit, ¶ 5, **Exhibit L**).

49. While at the academy, the defendant Officers and Sergeant received training in, *inter alia*: criminal investigation, human relations, defensive tactics, use of force, search and siezure. (Sgt. Rioux Affidavit, ¶ 6, **Exhibit L**).

50. The defendant Officers attended supplemental training courses as part of their re-certification requirement dealing with laws of arrest, stopping suspects, use of force, search and seizures, and all officers were certified at the time of the incident subject of this case. (Sgt. Rioux Affidavit, ¶ 7, 8, 9, **Exhibit L**).

51. In addition, Officer Proulx was a certified canine handler at the time of the subject incident, having been so certified and re-certified by the Connecticut State Police Canine Academy in accordance with Town of East Hartford directives. (CSP Canine Trainer Sgt. Rodino Affidavit, ¶ 5, 6, 7, **Exhibit M**).

52. After the initial thirteen week training program at the Academy, Officer Proulx was required to, and did train monthly with the police canine Dakota, at the Connecticut State Police Canine Academy. (CSP Canine Trainer Sgt. Rodino Affidavit, ¶ 7, **Exhibit M**).

53. Officer Proulx further trained with Canine Dakota at the Connecticut State Police academy one week every year, in accordance with the Town of East Hartford directive, receiving instruction in canine handling, including tracking and use of force with a canine under CALEA guidelines. (CSP Canine Trainer Sgt. Rodino Affidavit, ¶ 7, 8, 9, **Exhibit M**).

54. During Officer Proulx' tenure with the Town of East Hartford Police Department, in approximately 1992, Officer Proulx was investigated for the on-duty shooting death of Eric Reyes. (Affidavit of Sergeant Juergens, ¶ 5, **Exhibit N**).

55. The Eric Reyes case was investigated by the East Hartford Office of Professional Standards and the U.S. Department of Justice. (Affidavit of Sergeant Juergens, ¶ 6, **Exhibit N**).

56. After an in-depth investigation of the Eric Reyes' case, the U.S. Department of Justice found that "no additional investigation is being requested and the conclusion is reached that Officer Proulx's 'account of acting in self defense in the context of an assault by numerous teenagers is corroborated by his assaulters and other independent witnesses.'" (U.S. Department of Justice Report, **Exhibit O**).

57. The East Hartford Officer of Professional Standards exonerated Officer Pruoulx for his use of deadly force in the Eric Reyes case. (Affidavit of Sergeant Juergens, ¶ 8, **Exhibit N**).

58. During Officer Proulx' tenure with the Town of East Hartford Police Department, in the late 1980s, Officer Proulx in addition to three other officers were investigated into the sudden death of Roger Giannini while the suspect was in custody. (Affidavit of Sergeant Juergens, ¶ 9, **Exhibit N**).

59. Autopsy reports revealed that Roger Giannini's sudden death was caused by "[a]cute cocaine intoxication with collapse following altercation with acquaintance and restraint by police." (Office of The Chief Medical Examiner report, **Exhibit P**).

60. The East Hartford Officer of Professional Standards exonerated Officer Pruoulx and the other three officers in the Roger Giannini case. (Affidavit of Sergeant Juergens, ¶ 11, **Exhibit N**).

61. After an investigation into the Giannini case, the U.S. Department of Justice found that " …based on the information currently available to us, this Department has no intention of taking any further action." (U.S. Department of Justice Report, **Exhibit Q**).

62. The action (<u>Brocuglio v. Proulx, et al</u>), Docket No. 3:99CV1888 –SRU) is currently pending.  The case involves numerous defendants including Officer Proulx and

it is a highly contested case (Respectfully requesting that this Court take judicial notice of a pending federal case).

63. Chief Mark Sirois was made acting chief in March of 2000 and sworn in as Chief of the police department on February 16, 2001, being only one month before the subject incident. (Affidavit of Sergeant Juergens, ¶ 13, **Exhibit N**).

> DEFENDANTS,
> WILLIAM PROULX, JON STOSUY,
> LISA FREEMAN, JANE/JOHN DOE,
> MARK J. SIROIS, CHIEF OF THE EAST
> HARTFORD POLICE DEPARTMENT, and
> THE TOWN OF EAST HARTFORD
>
> By   /s/ Daniel C. DeMerchant
>    Daniel C. DeMerchant
>    Howd & Ludorf
>    65 Wethersfield Avenue
>    Hartford, CT  06114
>    (860) 249-1361
>    ct19342

## **CERTIFICATION**

      This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via First Class Mail to the following counsel of record this 15th day of December, 2004.

Daniel D. Dwyer, Esquire
Dwyer, Sheridan & Fitzgerald, LLC
100 Sycamore Street
P.O. Box 537
Glastonbury, CT  06033

David Jaffe, Esquire
Eisenberg, Anderson, Michalik
 & Lynch, LLP
136 West Main Street
P.O. Box 2950
New Britain, CT  06050-2950

                                               ____/s/ Daniel C. DeMerchant___